Roy M. Page, S.
The issue of construction herein is in relation to the devolution of certain shares of stock bequeathed in and by several of the dispositive paragraphs contained in the will of the above-named decedent. That is as to whether, in legal effect, such provisions are classifiable as specific or general legacies. Those in question are included in the following:
‘ ‘ Fifth. I give and bequeath to my niece, Hazel M. Styers, Seventy-five shares (75 sh.) of common stock of General Electric Company, to be hers absolutely and forever.
“ Sixth. I give and bequeath to my niece, Elma T. Pike, Seventy-five shares of common stock of General Electric Company, to be hers absolutely and forever.
“ Seventh. I give and bequeath to my niece, Helen Elston, seventy-five shares (75 sh.) of common stock of General Electric Company, to be hers absolutely and forever.
‘ ‘ Eighth. I give and bequeath to my niece, Buth Brink, Ninety (90) shares of common stock of South Penn Oil Company, to be hers absolutely and forever.
*120 ‘ ‘ Ninth. I give and bequeath to my nephew, George Pike, ninety (90) shares of International Paper Company stock, to be his absolutely and forever.
“ Tenth. I give and bequeath to my nephew, Ralph Zimmer, all of the shares of General Motors Company stock which I may own at the time of my decease.
“Eleventh. I give and bequeath to my nephew, Eugene Zimmer, all of the shares of United Gas Corporation stock which I may own at the time of my decease.
‘ ‘ Twelfth. I give and bequeath to my nephew, Kenneth Zimmer, all of the shares of stock of Johns Manville Company which I may own at the time of my decease.
“ Thirteenth. I give and bequeath to my niece, Arleyne L. Ebersole, Eighty-five (85) shares of International Paper Company Stock, to be hers absolutely and forever.
‘ ‘ Fourteenth. I give and bequeath to my niece, Kathryn L. Styers, all of the shares of Union Carbide & Carbon Company stock which I may own at the time of my decease.”
Of the above-quoted provisions, only those contained in paragraphs “ Fifth ”, “ Sixth ”, “ Seventh ”, “ Ninth ” and “ Thirteenth ” are disputed. The only reason for setting forth the others is to show the difference in the language employed by the testatrix in her dispositions of shares of stock other than General Electric and International Paper.
The cause of the controversy in relation to the above-quoted provisions of paragraphs “ Fifth ”, “ Sixth ” and “ Seventh ” is that, at the date of the will (June 17, 1953), the testatrix was the owner of exactly the total number of shares of General Electric stock of which disposition is made in these three paragraphs, but, before she died, the issuing corporation split her 225 shares three for one, so that they became 675 shares. The issue to be determined herein is as to who gets the additional 450 shares as between the legatees named respectively in these three paragraphs and residuary beneficiaries designated by paragraph “ Seventeenth ” of the will.
This same commentary is true as to the other two disputed paragraphs, viz. ‘ ‘ Ninth ’ ’ and ‘ ‘ Thirteenth ’ ’, disposing of International Paper, except that, in the case of these shares, the increase had arisen by way of stock dividends raising the total 175 shares owned by the testatrix at the date of execution of her will to 202 at the date of her death, an increase of 27 shares.
It is contended by counsel for some of the residuary legatees that, when the testatrix provided a bequest of a stated number of shares, she must be taken to have intended exactly what she *121 expressly stated and that, in determining her testamentary intent, only the circumstances surrounding her at the execution of the will and not subsequent developments can be taken into account. In this connection, he further contends that, pursuant to the well-established principle that testamentary intent is to be gathered from the will as a whole, in the present case, the testatrix’ intent is clearly apparent from the fact that, when she meant any legatee to take all the shares of any category which she might own at the date of her death, she plainly said so, as exemplified in the above-quoted paragraphs ‘1 Tenth ’ ’, “ Eleventh ”, “ Twelfth ” and “ Fourteenth ”.
These arguments are countered by counsel for beneficiaries named in paragraphs “ Fifth ”, “ Sixth ”, “ Seventh ”, “Ninth” and “ Thirteenth ” by the contention that the only “ reasonable ” reason for a variance between the language in these paragraphs and the other paragraphs, can and should be accounted for solely because of the fact that, in paragraphs where the testatrix said, “ all of the shares * * * which I may own at the time of my decease ’ ’, she intended to and did bequeath to a sole legatee all of a particular category of stock, whereas in the cases of General Electric and International Paper, although she had the same intent as to the dispositions of these also, there was a variation in the expression of her intent as to these two stocks solely because her purpose and intent was to apportion the shares of these two categories between or among two or more legatees by means of providing for a division of the General Electric and International Paper among several beneficiaries by the simple (but ambiguous) device of assigning to each of the legatees thereof a fractional or proportionate interest to be determined on the basis of the number of shares of each of these two categories she had-when she executed her will. It is submitted by counsel that this line of reasoning is supported by the most consistent composite interpretation of all the above-quoted paragraphs to the effect that in every instance the testatrix intended to bequeath all the shares of stock of which she might die possessed as specific bequests, but, in the cases of the General Electric and International Paper stock, she employed varying language merely and solely to effectuate a division of her shares of these two corporations.
Legacies are specific, demonstrative or general. Classifying them is dependent on a determination of testamentary intent.
Frequently, because of some patent or, as in this case, latent ambiguity, testamentary intent is impossible of absolutely certain determination. Therefore, in such cases, a court must *122 evaluate the indicia thereof. Often, as in the present case, it is requisite to determine which of two opposed possible interpretations is the more probable. In some cases the degree of probability is stronger than in others, but, in every such case, whatever indicia of probability tending to support either of two possible conclusions there may be must be weighed and considered.
The above-quoted paragraphs ‘ ‘ Fifth ”, “ Sixth ’ ’ and “Seventh”, standing alone, indicate that, pursuant to well-established authorities, each of the bequests therein provided should be interpreted as a general bequest. It is only by considering the circumstances surrounding the testatrix at the date on which she executed her will and, more potently, considering her general testamentary scheme as disclosed by reading the will as a whole that any suggestion to the contrary occurs.
Considering that, at 'the date of the will’s execution, the testatrix was the owner of exactly 225 shares of General Electric which, obviously, she intended to and did divide equally among three legatees, coupled with the further consideration that she also owned common stock of a number of other corporations of which, in all instances excepting her South Penn Oil Company stock bequeathed in paragraph “Eighth”, she made clearly specific bequests respectively to each of several individual legatees, there emerges at least some basis for inferring- that, in the case of the General Electric stock, effectuating an equal apportionment among three beneficiaries was a reason and, very possibly, the only reason that she employed the phraseology, differing from that in other paragraphs, found in the three paragraphs relating to this stock. It appears quite probable that this phraseology was a form of wording which, to her, seemed a simple and logical method of dividing the stock so that, unlike her objective in relation to the others, the larger or more valuable block of stock that she owned would be divided into three equal parts and bequeathed equally among the three legatees named respectively in these three paragraphs as a specific bequest of one third to each of them, except for dividing the shares, the same as the provisions of other paragraphs provide for the devolution of other categories of stock of which she died possessed each specifically to an individual legatee thereof. On the basis of probability, this interpretation seems somewhat accentuated when we consider how drastically different the devolution of the General Electric stock would be, if the bequests thereof were construed to be general, than her clearly expressed intention in regard to the other stocks.
*123 This inference of testamentary intent to constitute bequests of all of the General Electric stock of which she died possessed as specific rather than general bequests is further corroborated to some extent by a special provision in regard to the source of payment of the estate tax which has the effect of exonerating each one of the bequests from participating therein and making the entire estate tax at the expense of the residuary legatees.
In conjunction with all the other circumstances, a consideration which seems determinatively significant in the case of the General Electric stock is that the increase in the original 225 shares was, from the testatrix’ standpoint, brought about solely by the fortuitous circumstance that, shortly before her death, the issuing corporation saw fit to split these shares three for one. It seems more reasonable than otherwise to infer that the testatrix’ intent as to the General Electric stock was that she desired to divide it equally among three legatees, and that this stock should specifically devolve to those to whom she had given it in the proportions indicated by the number of shares bequeathed to each of such legatees respectively. Otherwise, the legatees of this stock, unlike the legatees of any of the others, would lose two thirds of the value of the shares she intended them to take and which, but for the stock split, they would unquestionably have taken. Sight should not be lost of the fact that the present situation is brought about not by any “ trading ” the testatrix did, nor by any act whatever on her part, but solely by reason of the issuing corporation’s having split the original 225 shares three for one, thereby reducing the value of each original share as it would have been if there had been no stock split. The situation is not essentially different than a specific bequest of a chattel that later was, by some means, involuntary as far as the testator was concerned, divided into two or more parts. The parts would still comprise the originally bequeathed chattel. The whole is equal to the sum of all its parts.
Except for the basic consideration that the number of shares of General Electric bequeathed (will pars. ‘1 Fifth ’ ’, “Sixth” and “Seventh”) is the precise number which the testatrix owned on the date she executed her will, the foregoing line of reasoning would, of course, be inapplicable. Moreover, the coincidence of a bequest with the exact number of shares owned, although significant in its indication of a testamentary intent to make a specific bequest, is equivocal and, in and of itself alone, not completely determinative to that effect. However, the weight of authority is to the effect that, given such a coincidence, very little additional evidence is required to stamp *124 the bequest as specific rather than general. (See Matter of Security Trust Co., 221 N. Y. 213.) In the present instance, although the issue is close, yet, because of the composite effect of all the above-mentioned indicia of testamentary intent, there appears to me to be more than 1 ‘ a very slight indication ’ ’ tending to show that the testatrix’ intent was that her bequest of the General Electric common stock should be regarded as specific rather than general.
The situation in relation to the International Paper stock is different. The increase in the number of shares which the testatrix owned when she executed her will and the number which she owned at the date of her death did not arise because of a splitting up of her original shares but in the form of stock dividends. In legal effect this is not essentially different than the situation would have been if she had purchased additional shares or if the corporation had issued cash instead of stock dividends. In either of these events, there can be no question but that additionally purchased shares or cash dividends, that is, any declared and paid during the stockholder’s lifetime, if she had any of them left at her death, would fall into the residuary estate.
The issues of construction presented in this case strikingly illustrate, as a paramount guiding principle for will draftsmen, the importance of flexible provisions, on a percentage or fractional basis, which are not only a preventative of miscarriages of testamentary intent in cases where eventualities occurring subsequently to the execution of a will result in a final situation being quite different from that which was, in all probability, envisaged by the testator, but which would also forestall latent as well as patent ambiguities resulting in controversies such as are presented in the present case.
Submit and settle decree accordingly.