James D. Hurley, S.
This is an application for the construction of a will.
The testator, Martin F. Maher, died on or about April 2,1956, leaving a sister, twelve nephews and nieces and a grandniece as his sole distributees.
The testator was a bachelor and had resided for over- 60 years in the town of Ontario, Wayne County, New York. Prior to his death, he resided with his sister, Alice Maher, a maiden lady about two years his junior, who acted as his housekeeper. During his lifetime, the testator’s main occupation was as president and owner of practically all of the shares of stock of the Beach & Maher Company, Inc., a corporation located in Ontario, New York and engaged in building, contracting and in the sale of coal, lumber and building materials. This was his main business endeavor, in which he was actively engaged until ill health forced his retirement.
The other main business interest of the testator was as director and one of the main stockholders of the State Bank of Ontario, New York. He was one of the organizers of the corporation in or about the year 1913 and he was a director of the bank from the time of its organization until after May, 1954. For years the bank had an authorized capital of 300 shares of stock of the par value of $100 each. Almost all of the stock was locally owned. It was not listed or sold on any stock exchange and there were very few sales of the stock.
On July 19, 1951, the testator executed his last will and testament. The will was duly admitted to probate on May 15, 1956 and letters testamentary thereon were duly issued. to John W. Brandt, the petitioner in this proceeding.
At the time of the execution of the will on July 19, 1951, as aforesaid, the testator was the owner of 35 shares of stock in the State Bank of Ontario of a par value of $100 per share. The book value of -said stock at the time of the execution of the will was approximately $1,257.32 per share.
*137 The testator, after making numerous monetary bequests, made the following bequests of stock in the State Bank of Ontario:
Sixteenth: I give and bequeath to my sister, Alice Maher, 15 shares of stock of the State Bank of Ontario.
Seventeenth: I give and bequeath to my niece, M. Louise Dorntee, 10 shares of stock of the State Bank of Ontario.
Eighteenth: I give and bequeath to my nephew, Maurice Maher, son of my brother, James E. Maher, 10 shares of stock of the State Bank of Ontario.
The will further makes disposition of the residuary estate and provides for the appointment of the executor, with certain instructions.
Between the date of the execution of the will and the date of the death of the testator and at a stockholders’ meeting of the State Bank of Ontario held on January 8, 1952, a resolution was adopted that the number of shares of stock be increased from 300 to 7,500, that the par value be decreased from $100 to $20 per share, that the authorized capital be increased from $30,000 to $150,000, and that the bank officers file the necessary certificate of amendment to the original certificate of incorporation. On January 10, 1952, the board of directors caused the sum of $200,000 to be transferred from undivided profits to the surplus account and $120,000 to be transferred from the surplus account to the capital account on the bank’s records. The certificate of amendment was duly filed, and on March 1, 1952, the testator exchanged his 35 shares of stock in the State Bank of Ontario, having a par value of $100 per share, for 175 shares of stock, having a par value of $20 per share. Thereafter, at a directors’ meeting held on or about March 6,1952, a resolution was adopted that a stock dividend of 4 shares on each of the outstanding shares having a par value of $20 be declared. Pursuant to this resolution and on March 10, 1952 an additional certificate was issued by the bank to the testator for 700 shares of stock of a par value of $20 each.
At the time of his death, the testator was the owner of 875 shares of stock of the State Bank of Ontario of a par value of $20 each. He had received these shares by virtue of the stock split and dividend in exchange for the original 35 shares of stock of a par value of $100 each. At the time of the execution of the will, the 35 shares liad a tolal book value of $44,006.20; at the time just prior to the stock split the 35 shares had a book value of $1,383.54 per share or a total book value of $47,423.90. After the stock split and the declaration of the stock dividend, the 875 shares owned by the testator had a book value of $55.34 per share or a total book value of $48,422.50.
*138 Subsequent to the death of the testator, certain dividends have been paid upon the shares of the State Bank of Ontario.
The questions raised in this application for the construction of the will are as follows:
1. Were the bequest's of the 35 shares of stock in the State Bank of Ontario contained in paragraphs “ Sixteenth ”, “ Seventeenth ” and “Eighteenth” of the will, general or specific bequests ?
2. In the event it should be determined that the bequests are specific bequests of the stock owned by the testator at the time of the making of the will, do the shares issued at the time of the stock split follow the original shares and go to the legatees mentioned in paragraphs “ Sixteenth ”, “Seventeenth” and “ Eighteenth ” of the will?
3. What disposition is to be made of the 700 shares of stock issued to the testator as stock dividends ?
4. What disposition is to be made of the dividends declared on the stock subsequent to the death of the testator?
As a general rule, bequests of stock are considered to be general bequests, unless it can be determined from the will and from the circumstances existing at the time of the execution of the will, that the testator intended to bequeath certain specific shares of stock.
As previously pointed out, the testator at the time of the making of the will in 1951 was a director of the bank and continued to be such a director until long after the stock split and the declaration of the stock dividend. It is presumed that he had knowledge of the value of the original 35 shares of stock, as well as the value of the 875 shares of stock which had been issued as a result of the stock split and the stock dividend.
Under these circumstances, it appears to the court that both the stock split and the declaration of the stock dividend constituted a single plan by the management of the bank to decrease the value of the stock, increase the capital and bring the stock to a point where it was worth some approximation of the par value of the stock.
It is noted that at the time of the execution of the will on July 19, 1951, the testator bequeathed his 35 shares of stock having a book value at that time of $44,006.20. It does not seem that the testator intended that the bequest of stock having that value should be cut down by the manipulations of the bank to bequests of 35 shares with a book value of $1,936.90.
Because of these facts and because of the fact that the testator bequeathed all of the stock in the State Bank of Ontario which he owned at the time of the execution of the will, I conclude that *139 all of the shares of stock in the State Bank of Ontario owned by the testator at the time of his death should go to the legatees named in paragraphs “ Sixteenth ”, “ Seventeenth ” and “ Eighteenth ” of the will as specific bequests in proportion to the amount bequeathed in paragraphs “ Sixteenth ”, “ Seventeenth ” and “Eighteenth” of the will, i.e.: 15/35 to Alice Maher; 10/35 to M. Louise Dorntee and 10/35 to Maurice Maher.
I appreciate the fact that some of the indicia of intention are lacking in this case, such as the failure of the testator to refer to the stock bequeathed as “my” shares of stock and the failure of the testator to make provision for the payment of the estate tax from the residue or for payment of the debts of the estate from sources other than the stock bequeathed. However, the familiarity with the bank situation by the testator, the fact that he bequeathed all the bank stock he owned at the time of the execution of the will, together with the fact that the stock split and declaration of stock dividends represented actions by the bank in regard to the stock, and not any trading or purchase of additional stock by the testator, lead to the conclusion that the testator intended to give all of the stock that he owned in the State Bank of Ontario at the time of the execution of the will to the beneficiaries mentioned in paragraphs “ Sixteenth ”, “Seventeenth” and “Eighteenth” thereof. (Matter of Adams, 90 Misc. 254; Matter of Martin, 252 N. Y. 582; Matter of Security Trust Co., 221 N. Y. 213; Matter of Jaynes, 3 Misc 2d 118.)
In view of the obvious fact that the stock dividend was taken from surplus accumulated prior to the execution of the will and was part of a plan by the representatives of the State Bank of Ontario to devalue the stock, and does not represent profits earned between the date of the execution of the will and the date of the decedent’s death, it seems that these circumstances must differ from the facts existing in the case of Matter of Jaynes (supra) and are more in line with the situation set forth in the case of Matter of Adams (supra).
Since the stock owned by the testator is held to be specifically bequeathed, the dividends declared on the stock since the date of death of the testator must of necessity go to the legatees mentioned and described in paragraphs “ Sixteenth ”, “ Seventeenth ” and “Eighteenth” of the will in proportion to the number of shares bequeathed as hereinabove determined. (Matter of Security Trust Co., supra.)
Prepare decree accordingly.