[Civ. No. 5449. Fourth Dist. July 1, 1957.]

Estate of MAY SHUMACK, Deceased. NELLIE G. JACKSON, Appellant, v. NELL MADAY et al., Respondents.

Joseph Brand Colton for Appellant.

Hillyer & Crake, Robert Crake and Vernon F. Bennett for Respondents.

MUSSELL, J.—May Shumack died testate in San Diego County on May 31, 1954, and left surviving her one sister, Mrs. Fred O. (Nellie G.) Jackson, the appellant herein; three nieces, Mrs. Anthony Maday, Mrs. Helen Hayes, and Mrs. David Kessler; two nephews, Messrs. Frederick and Lewis Petley, who were related by blood to her deceased husband; and two cousins, Messrs. Orph and John Cottingham, who were also related to decedent's predeceased spouse. The Bank of America was named by decedent as her local executor and the Messrs. Cottingham were named as alternative executors in the state of Indiana.

Decedent's will, dated January 8, 1951, and two codicils, dated respectively October 1, 1953, and March 15, 1954, were all entirely written, dated and signed by the testatrix and were duly admitted to probate.

On April 18, 1955, the Bank of America filed its first and final account, report, petition for distribution and construction of will, determination of heirship, for final distribution and for allowance of statutory and extraordinary fees. An answer to this petition was filed by Nell Maday, Helen Hayes and Frederick J. Petley and on May 5, 1955, there was filed on behalf of appellant a "Statement of Claim of Interest in Estate" wherein it was set forth that appellant was the sister and sole heir at law of the decedent, and claim was made to the whole of said estate, with certain exceptions. On May 25, 1955, appellant filed her "Petition for Probate of Earlier Will," an holographic will in the form of a letter dated August 10, 1929. On June 10, 1955, Nell Maday, Helen Hayes and Frederick Petley filed objections to the probate of this will offered by appellant. These matters were heard in November, 1955, and on November 30th the probate judge filed an "Opinion of the Court" and on January 16, 1956, filed an "Order Interpreting and Construing Will and Codicils and Determining Heirship and Decree of Distribution and Ruling on Petition of Nellie G. Jackson for Probate of Earlier Will." Appellant filed a notice of intention to move for a new trial and on February 8, 1956, the probate judge filed an order vacating his order of January 16, 1956. A supplemental opinion was filed by the judge on February 8,

1956, and on February 10, 1956, the judge filed his "Order and Decree Interpreting and Construing Will and Codicils and Determining Parties Entitled to Distribution and Disposing of Petition for Probate of Earlier Will." Nellie Jackson appeals from this order, claiming that the interpretations, constructions and directions of the probate judge are erroneous.

■ Appellant first argues that paragraphs two to seven, inclusive, of the will do not constitute bequests because the testatrix failed to use therein words of donation indicating a wish, design or intent to make a bequest or gift. This contention is without merit.

The will of January 8, 1951, begins as follows:

"Coronado California
"January 8 - 1951

"I May G. Shumack, at this time a resident of San Diego County, and being of sound mind and menory do make published declare this to be my last will and testament."

Paragraphs first to seventh, inclusive, follow and read:

"1st All debts must be paid. Take my body or send it to Muncie Indiana. Then I want a Grave marker like my husbands.

"2nd Mrs Anthony (Nelle) Maday, 562 Robinwood Detroit Mich. The Muncie Federal Savings and Loan Assc Stock.

"3rd Lewis Petley (Rockford, Michigan First Federal Savings and Loan Assc San Diego Calif.

"4th Mrs. David (Pauline) Kessler 3612 Kendal Ave Cincinnati Ohio. The Railroadmen's Federal Savings and Loan Assc. Indianapolis Indiana."

"5th Mr Frederick (nephew) Petley 14318 Lauder Ave Detroit Mich. The Arsenal Building and Loan Co Indianapolis Indiana.

"6th Mrs. H. L. Hayes (Helen niece) 21461 Sloan Dr apt 205) San Diego Federal Savings and Loan Co.

"7th Mrs Fred O. Jackson 828 Guadalupe Ave Coronado Calif Western Building and Loan Co (Salt Lake Utah.

"Miss Lilly Jackson 134 West 9th Ave Columbus Ohio Marion Federal Building and Loan Co Marion Indiana."

Paragraphs eighth, ninth and tenth are as follows:

"8th Give $1,000) One Thousand dollars to the Grace Episcopal Church Muncie Indiana In Menory Harry A. Shumack May G. Shumack and My mother Helen Gatrell. Take it from War Bonds.

"9th The Grand Fathers Clock goes to ~~Ella Eaton~~ Coronado Calif.

"10*th* Mrs. Orph Cottingham R.R#3 Noblesville Indiana is to have the interested of The Federal Savings and Loan Assc Marion Indiana to see the graves are kept up and some flowers on them some time if anything happens to her or her husband it goes to nices and nephew if she wants to sell it is all right."

It should be here noted that paragraphs eighth, ninth and tenth of the will contain words indicating intended bequests, to wit, "Give" in paragraph eighth; "Goes To" in paragraph ninth; and "Is to Have" in paragraph tenth.

At the bottom of the first page of the will the testatrix wrote the word "Over" and on the back of that page wrote as follows:

"11*th* William H. Grist. (U S Internal Revenue Service) 1533 8*th* Ave. San Diego $500 Bonds U.S. for being kind to me.

"12. Mr. Martin Wicarius (569 C Avenue Coronado Calif.) $500 in U S Bonds.

"13. Mr Fred Brunner 1134 Orange Avenue Coronado Calif. $500.00 Bond.

"14 Mrs. Richard R. Bradley Jr (Comd.) 540 C Avenue. Coronado Calif ~~$500.~~

"15 Mrs J. F. McClain 777 B Avenue Coronado Calif. $100 U S. Bond.

"16 Mrs. Wm F Gresham 550 Marina Ave. Coronado Calif $100 U.S. Bond.

1010. E Ave
"17 Mrs Harry Levinsinton 443 ~~Palm Avenue~~ Coronado Calif $300 Bond.

"If any of the above had died since this is made ~~it~~ What is left of the U. S Bonds divide among the last seven on this page. ~~eight~~

"The money I have in Savings in Banks Of America and the First National Bank. divide it between the nieces Mrs. L. A. Hayes Detroit Mrs Anthony Maday Detroit Nephews Frederick Petley and Lewis Petley Rockford Mich.

"My checking accounts in both of the Banks if there is any left or out of the War Bonds after the Inheritance tax and other expenses divide it among the seven. Give Shares of the San Diego Gas Co to Mrs David Kessler Cincinnati Ohio Divide my rings and other Jewelry among the 3 nieces.

"I here appoint Bank of America to be the Executor.

"If one has to be appointed in Indiana Mr Orph or John Cottingham R.R#3 Noblesville

May G. Shumack.''

The two codicils are as follows:

"Codicil To My Will Oct 1-1953

"I want to make some changes in my will

"Give only $300 to Mr Grist.

"My Grand Fathers Clock to Mr. Rock for taking care of it instead of Ella Eaton.

"Cucooko Clock goes to Robin Bradley

"And only give Comd. Bradley $200. 540 C Ave.

"Mrs. Harry Livinston 1010 C Ave $300. instead of $100

"Miss Kathleen Harington (over at Harts Stre $300.

"O. H. Starett Supt $200.

"Mrs R. H. Hunt $50.

"Bob Legge $50.

"Adm. Kempff $200.

"I want the ones I left money to be paid before the Relatives for they all have been good to me even if you have to sell some stocks to pay them

May G. Shumack.''

"Codicil to My Will March 15.-1954

"Cancel what I gave to Bob Legge.

"Cancel what I gave to Mrs. Clain B Ave

"Cancel what I gave to Mrs Wm Gresham

"Cancel what I gave to Mr Wm Griest San Diego

"Give my grand-father clock to Mr Starett

"Give my cukoo clock to Kathleen Harrington

"Give Patrolman Boggeman $50.

"Give Patrolman Sculy $25.

"Let the three girls pick out thery likes of pictures, dishes, furniture Miss Kathleen Harrington Mrs Robert Buemer Mrs Harry Levinston.

May G. Shumack.''

In *Estate of Lefranc*, 38 Cal.2d 289 [239 P.2d 617], it is held that a will is to be construed according to the intention of the testator; that the words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative; and of two modes of interpreting the will, that is to be preferred which will prevent a total intestacy; that all parts of a will are to be construed in relation to each other, and so as, if possible, to form one consistent whole; that the making of a will raises a presumption that the testator in-

tended to dispose of all his property and that the prevailing principle is that the function of the court is to construe a will, not to make one; to ascertain the testator's intention as expressed and, if lawful, give it effect.

In *Estate of Herreshoff*, 144 Cal.App.2d 597, 599-600 [301 P.2d 457], it is said: "The objective in the interpretation of a will is to ascertain the intention of the testator as disclosed by the language he has used in his will. (*Estate of Brunet*, 34 Cal.2d 105, 107 [207 P.2d 567, 11 A.L.R.2d 1382].) It is well settled that it is not what a testator wanted to do but what he actually did, as expressed in the words used, which governs in the absence of other evidence with respect to his intention. (*Gardner* v. *Snow*, 119 Cal.App.2d 546, 549 [259 P.2d 95].) A court may not, under the guise of construction, make a will for a testator to take the place of the one made by him if its intent is plain. (*Estate of Beldon*, 11 Cal.2d 108, 112 [77 P.2d 1052]; *Estate of Soulie*, 72 Cal. App.2d 332, 335 [164 P.2d 565].)"

In *Estate of Brunet*, 34 Cal.2d 105, 107 [207 P.2d 567, 11 A.L.R.2d 1382], it is held: "The objective in the interpretation of a will is to ascertain the intention of the testator as disclosed by the language he has used. (*Estate of Young*, 123 Cal. 337, 345 [55 P. 1011]; *Estate of Henderson*, 161 Cal. 353, 357 [119 P. 496]; *Estate of Ottoveggio*, 64 Cal. App.2d 388, 391 [148 P.2d 878].)"

In *Estate of Williams*, 113 Cal.App.2d 895, 897 [249 P.2d 348], it is held: "The cardinal rule is that the will should be construed in accordance with the intention of the testator. This intention is to be sought for by looking to the entire will, by examining the language in question, and by determining what was meant by the words actually used."

The doctrine of gifts by implication is also applicable in the instant case. As is said in *Brock* v. *Hall*, 33 Cal.2d 885, 887, 888, 889 [206 P.2d 360, 11 A.L.R.2d 672]: "The implication of gifts in wills rests upon the primary rule of construction that the duty of the court in all cases of interpretation is to ascertain the intention of the maker from the instrument read as a whole and to give effect thereto if possible, and it is well settled that, where the intention to make a gift clearly appears in a will, although perhaps imperfectly expressed, the court will raise a gift by implication. [Citations.]" . . .

"When the intention to make a gift clearly appears from the instrument taken by its four corners and read as a whole,

considering its general scheme, the property involved, and the persons named as beneficiaries, the gift may be implied. (*Estate of Franck,* 190 Cal. 28, 31 [210 P. 417].) Although the court may not indulge in conjecture or speculation simply because the instrument seems to have omitted something which it is reasonable to suppose should have been provided, a gift will be raised by necessary implication where a reading of the entire instrument produces a conviction that a gift was intended. [Citations.]''

In the instant case the testatrix, at the beginning of her will, declared it to be her last will and testament, clearly indicating her intent to dispose of her property and referring to the entire document. The paragraphs of the will which follow are numbered consecutively, a further indication that its several provisions are each intended as a part of the will and are to have some meaning. The declaration following paragraphs eleven to seventeen of the will ''If any of the above has died since this is made, what is left of the United States bonds divide among the last seven on this page'' refers to the entire will and also refers to a partial lapse of a preceding disposition of the bonds and the only earlier disposition of the United States bonds elicited from the will is one that would follow construing paragraphs eleven to seventeen, both inclusive, as though each had contained apt language bequeathing to the persons therein named the amount in United States bonds in that paragraph set against his or her name and address. That this is the true construction of paragraphs eleven to seventeen is supported by the expression in paragraph eleven, otherwise meaningless, ''for being kind to me.'' This view is further supported by the language used in the two codicils, in the first of which it appears that the testatrix intended to cut down from $500 to $300 the amount in United States bonds mentioned in paragraph eleven of the will. The first codicil changed the bequest to Mrs. Levinsohn from a $300 bond bequeathed to her under paragraph seventeen of the original will to $300 in cash. In the second codicil the testatrix canceled what she had given to Mrs. William Gresham in paragraph sixteen of the original will, indicating that the testatrix had made a valid bequest in said paragraph sixteen. The second codicil directs the cancellation of ''What I gave to Mr. Wm. Griest of San Diego'' and evidently refers to what was given to Griest by paragraph eleven of the original will. The codicils, when read together and considered as a whole, justify the construction and con-

clusion of the probate judge that valid bequests were effected by the provisions of paragraphs two to seven and eleven to seventeen, inclusive, of the will.

 Appellant argues that the word "stock," as used in paragraph two of the will, does not include "cash." The first and final account and inventory shows a balance in decedent's name in savings share account No. 3866 in the Muncie Federal Savings and Loan Association of Muncie, Indiana, in the sum of $4,990. There was evidence that the association has no "stock," but that these share accounts are commonly referred to by the public as "stock"; that this asset was not "cash" but rather a savings share account; that this asset was evidenced by a membership certificate in the association and the secretary of the association characterized the interest of the testatrix as "stock." It appears sufficiently clear that in these circumstances that what the decedent meant by referring to this "Assc stock" was the share account and that, therefore, the legacy was valid.

The inventory further shows that at the time of her death the testatrix had a balance in savings share account Number 519 in the First Federal Savings and Loan Association of San Diego, California, the association named in paragraph third of the will, in the amount of $2,400; that at the time of her death she had a balance in savings share account Number 118856 in the Railroadmen's Federal Savings and Loan Association of Indianapolis, Indiana, the association named in paragraph fourth of the will, in the amount of $2,597.44; that she had a balance in savings account Number 7550 in the Arsenal Building and Loan Association of Indianapolis, Indiana, mentioned in paragraph fifth of the will, in the amount of $1,988.97; that she had a balance in investment share account Number 0323 in the San Diego Federal Savings and Loan Association, named in paragraph sixth of the will in the amount of $2,000; that she had a balance in savings share account Number 22679 with the Western Savings and Loan Company of Salt Lake City, Utah, the first of the two institutions named in paragraph seventh of the will, in the amount of $1,073.65 and a "Contingent Participation Units Certificate No. 1417" therein appraised at $102.55. The inventory, however, shows no share account nor other investment held by the decedent in the "Marion Federal Building and Loan Company," referred to in said paragraph seventh after the name "Miss Lily Jackson." There is no evidence that at the time of her death she had any other interests or

investments with any of the corporations, associations or institutions referred to in paragraphs second to seventh, both inclusive, of the will.

■ The probate judge properly held that what the decedent intended to bequeath in each of said paragraphs third to seventh, both inclusive, of her will was all her investment in or with the corporation, association or institution in such paragraph mentioned, which, in each instance except in the case of the "Marion Federal Building and Loan Company," turns out to be the inventoried balance at the time of her death standing to her credit in her share account or other account with the corporation, association or institution named in the particular numbered section of the will. This construction of paragraphs two to seven, inclusive, of the will does not make a will for the decedent but is an ascertainment of the intention of the testatrix as expressed by the language used in the entire will.

Appellant argues that the portion of the will relating to death of beneficiary and division of what is left of United States savings bonds is inoperative and so ambiguous, uncertain and unintelligible that it is inapplicable and that the interpretation of the probate judge is erroneous. We are not in accord with this argument. Following paragraph seventeen of the will the testatrix wrote "If any of the above has died since this is made ~~it~~ what is left of the U. S. Bonds divide among the last ~~eight~~ seven on this page." The words "the above" obviously refer to the seven persons named in the preceding paragraphs eleven to seventeen, both inclusive. It appears that the testatrix intended to provide for the disposition of the bonds bequeathed to these seven persons in the event that any one of them died and that such residue of bonds should be divided among the last seven named on that page of the will, to wit, the five nieces and nephews of the decedent and Messrs. Orph and John Cottingham. Actually there were eight named, including the executor Bank of America. It is evident that the testatrix first referred to the last eight named on said page and later crossed out the word "eight" and wrote the word "seven" with the intent of including only the last seven natural persons named on such page and excluding the Bank of America.

Appellant contends that the probate judge improperly interpreted and construed the following portion of the will "My checking accounts in both of the banks if there is any

left or out of the War bonds after the Inheritance tax and other expenses divide it among the seven." These words are on the last page of the will between the bequests of the savings accounts, the Bank of America and the First National Bank, and the bequest of shares of San Diego Gas Company to Mrs. David Kessler. The construction and interpretation placed on the quoted portion of the will by the probate judge is that the testatrix intended thereby that should any balance remain in her checking accounts or any balance remain of her United States savings bonds, after the specific bequests from the same contained in her will, and after the payment from the applicable assets of her estate of her debts, funeral expenses, expenses of administration and such inheritance and estate taxes as might have to be deducted from such checking accounts and remaining bonds, the remaining balance of such checking accounts and United States savings bonds would belong in equal shares to "the seven," to said five nieces and nephews and Orph and John Cottingham. This construction appears reasonable and logical and in accordance with the intent of the testatrix.

Finally, it is argued that the interpretation of that portion of the will and the direction of the probate judge relating to the "inheritance tax and other expenses" is improper and erroneous. The order and decree in this connection provides as follows:

"(22) For payment of the debts of the decedent and the expenses of her last illness and funeral expenses, and expenses of administration of her estate, resort shall first be had to any residuum of her estate, such, e.g., as her inventoried stock in the Southern California Edison Company not specifically bequeathed to anyone. Any deficiency shall first be charged to the balance of funds described in the inventory as in her checking (but not her savings) account in the Bank of America National Trust and Savings Association (Coronado Branch) and to any residue, or the proceeds of any residue, of United States Savings Bonds referred to in the last paragraph of the original will, preceding the paragraph nominating the executors; and the disposition of such checking account and residuary bonds, or the proceeds thereof, made in such paragraph shall ratably abate to that extent. If a deficiency still remain, it shall be charged proportionately against all other monetary bequests, inclusive of bequests of the decedent's savings accounts and share accounts (made in the will or codicils) and the assets represented by any such

bequests not reduced heretofore to cash, shall be reduced to cash to the extent necessary to satisfy such charges. All state inheritance taxes shall be charged against the respective bequests legally chargeable therewith and not paid out of the residuary assets of the estate.''

This order clearly provides that all state inheritance taxes shall be chargeable against the respective bequests legally chargeable therewith and not out of the residuary assets of the estate and each bequest is made subject to the payment of inheritance taxes, if any.　　　As is said in *Cohn* v. *Cohn,* 20 Cal.2d 65, 67 [123 P.2d 833]:

''Generally speaking, the state assesses the privilege of succeeding to property, and computes the tax upon the interests of the legatees or devisees and the degree of relationship, if any, to the decedent. [Citations.] The tax is not one of the expenses of administration or a charge upon the general estate of the decedent; it is collectible out of each specific share or interest to which the beneficiary succeeds, and not from the general property of the estate. [Citations.]''

The interpretation placed on the provisions of the will relating to the payment of the inheritance tax appears to us to be proper and in accord with the intention of the testatrix.

In its order and decree from which this appeal is taken the probate judge declined to admit to probate the ''earlier will'' offered by appellant on the ground that it appeared improbable that there would be any residuum of said estate which could be subject to the operation of the document. Jurisdiction of the court was reserved to admit said earlier will if it should appear that there is a residuum to be disposed of and final distribution was deferred.

We find no reversible error in the order and decree from which this appeal was taken. The order and decree are affirmed.

Barnard, P. J., and Griffin, J., concurred.

A petition for a rehearing was denied July 22, 1957, and appellant's petition for a hearing by the Supreme Court was denied August 27, 1957.