[Civ. No. 6493.    Fourth Dist.    July 10, 1961.]

Estate of JOSEPH HELFMAN, Deceased. ELSIE CROSS et al., Appellants, v. MIRIAM H. LAR RIEU, as Executrix, etc., Respondent.

McCutchen, Doyle, Brown & Enersen and Mortimer Smith III for Appellants.

Fitzgerald, Abbott & Beardsley and Stacy H. Dobrzensky for Respondent.

SHEPARD, Acting P. J.—This is an appeal by two legatees from an order instructing the executrix respecting disposition of corporate stock devised by deceased. Appellant Planned Parenthood League of Alameda County, Inc., adopts the brief of appellant Elsie Cross since it was agreed that all bequests of specific amounts of Parke, Davis and Company stock will be distributed in accord with the decision in this appeal.

## FACTS

The material facts are not in dispute, and there is no conflicting testimony. In substance, they are as follows: On July 28, 1954, the above-named decedent was the owner of 23,614 shares of stock in Parke, Davis and Company. On that date he made the last codicil to his will. By the will and codicils thereto, he bequeathed 1,980 shares of Parke, Davis and Company stock to some 12 legatees, along with certain comparatively small bequests to charity and individuals, and the entire residue of the estate in trust to his two daughters and their issue. Included in the bequests of stock in Parke, Davis and Company was one of 300 shares to Elsie Cross, appellant herein. May 24, 1957, he was adjudicated an incompetent and his daughter, Miriam H. Lar Rieu, was appointed guardian of his person and estate. Apparently this guardianship continued to the date of his death on February 24, 1959.

On October 24, 1958, decedent was still the owner of said 23,614 shares of stock. November 12, 1958, Parke, Davis and Company ordered a "stock split" of three for one. Instead of calling in all stock and reissuing three new shares, the company ordered that each owner of stock of record on October 24, 1958, would be issued, without charge, an additional two shares of stock for each share so held. A certificate of such additional shares was, in fact, later delivered, so that the original 23,614 shares of stock actually became 70,842 shares. There is no contention that this was intended in any way as a stock dividend, nor is it contended that such "stock split" represented in any way any additional value. The record does not show that decedent, during his lifetime, was in any way cognizant of the fact that the "stock split" had

occurred nor that he had received such additional number of shares. There is nothing in the record to show that decedent, at the time he made his will, had any information that such "stock split" was proposed by company, nor that at any time in 1954 company even planned such "stock split."

Decedent's estate is appraised at $3,657,079.21, of which the total of 70,842 shares of Parke, Davis and Company stock is appraised at $2,851,390.50. The time for presentation of claims has expired and there is no suggestion anywhere in the record that funds are not ample to pay all legacies. Nothing now remains to be done as a prerequisite to distribution except final determination and payment of inheritance and estate taxes and sale of certain securities.

## The Controversy

In the case here at bar, respondent contends that on distribution only 300 shares out of the total of 70,842 should be distributed to appellant Cross. Appellant contends that she should receive 900 shares, representing what the 300 shares spoken of by testator were actually converted into. The trial court ordered distribution to said appellant of only 300 shares and, in like manner, ordered distribution to the other legatees of the exact number of shares numerically specified in the will. It is agreed by the parties that whatever decision is made in the matter will determine the distribution to all of the other legatees.

## Appellate Review

Respondent suggests that when extrinsic evidence is needed and a conflict appears, the construction given to an instrument by the trial court, which construction appears to be reasonable and consistent with the intent of the testator, will be followed by the courts of appellate jurisdiction even though some other interpretation may seem equally tenable with that accorded by the trial court. (*Estate of Sandersfeld*, 187 Cal.App.2d 14, 20-21 [9] [9 Cal.Rptr. 447].) ██ However, it is also the rule that where no extrinsic evidence is introduced or where there is no conflict in such evidence, the construction of an uncertain provision in a will is a question of law on which the independent judgment of the appellate court is to be exercised. Under such circumstances, there is no issue of fact and it is the duty of an appellate court to make the final determination in accordance with the applicable principles of law. (*Estate of Platt*, 21 Cal.2d 343, 352 [4] [131 P.2d 825]; *Estate of Wunderle*, 30 Cal.2d 274, 280 [6] [181 P.2d 874].)

In one sense, of course, as was pointed out by Wigmore and noted by American Law Report, extrinsic evidence is always necessary in order to relate the words of the will to the things and persons of which the will speaks. (*Paley* v. *Superior Court,* 137 Cal.App.2d 450, 456 [1] [290 P.2d 617].) In the case here at bar, however, whether or not the evidence relating to the "stock split" is thought of as extrinsic is of no consequence since there was no conflict whatever in the evidence.

## TESTATOR'S INTENT

One of the most basic of all the rules relating to interpretation of wills is that a "will is to be construed according to the intention of the testator." (Prob. Code, § 101; *Estate of Lefranc,* 38 Cal.2d 289, 295 [1] [239 P.2d 617]; *Estate of Avila,* 85 Cal.App.2d 38, 39 [2] [192 P.2d 64].) In arriving at such construction, each case ordinarily must depend upon its own particular set of facts. (*Estate of Henderson,* 161 Cal. 353, 357 [119 P. 496]; *Estate of Shumack,* 152 Cal.App.2d 208, 213 [313 P.2d 90].) While respondent suggests application of the rule that unless a different intention finds expression in the will it should be construed as applying to and disposing of the estate in its condition at the time of the death of the testator (*Estate of Chamberlain,* 56 Cal.App.2d 458, 461 [1] [132 P.2d 488]), it is also true that a testator's intent is to be determined as of the date of the execution of the instrument. (*Estate of Carter,* 49 Cal.App.2d 251, 254 [1] [121 P.2d 540].) Thus both rules must be applied together. The court in applying the will as of the date of the testator's death, attempts to ascertain the intent of the testator by the language of the will as understood by the testator at the time he wrote it, related to circumstances then present.

Respondent suggests as persuasive the rule that preference should be given to blood relatives or natural heirs over strangers. (*Estate of Torregano,* 54 Cal.2d 234, 249 [16-22a] [5 Cal.Rptr. 137, 352 P.2d 505].) However, it is also true that where the language is clear, the will must be interpreted according to its ordinary meaning and legal import, and the intention of the testator ascertained thereby. (*Estate of Watts,* 179 Cal. 20, 23 [175 P. 415]; *Estate of Lawrence,* 17 Cal.2d 1, 6 [1] [108 P.2d 893].)

## STOCK SPLIT

Neither appellant nor respondent have been able to discover any California authorities in which the precise point

here at issue has been determined. This court's independent research has developed none. The point therefore appears to be one of first impression in this state, although there is one dictum in *Estate of Cline,* 67 Cal.App.2d 800, 805 [4] [155 P.2d 390], in which the court analyzes the intent of the testator respecting his disposition of certain monies inherited from his father. As a portion of such analysis, the court there said: "The exchange of stock for notes of a corporation is not an ademption; neither is the exchange of specifically devised shares of stock for other shares an ademption; nor is the exchange of stock for bonds."

California authorities have followed the majority rule that there is no ademption of a specific bequest where there is merely a change of form. (*Estate of Cline, supra; Estate of Cooper,* 107 Cal.App.2d 592, 596 [4, 5] [237 P.2d 699]; *Estate of MacDonald,* 133 Cal.App.2d 43, 47 [2] [283 P.2d 271].) We are not here confronted with an ademption resulting from deficiency in the number of shares remaining at time of death, such as is presented in *Estate of Buck,* 32 Cal.2d 372, 376 [4] [196 P.2d 769].

In other states of the United States, outside of California, it is clear that the majority rule on "stock splits" is that the total number of shares represented by the shares named in the will is ordinarily distributed to the legatee named. Some of the authorities discuss a situation such as that presented in the case here at bar as a specific bequest, while some resolve the problem on the basis of a general bequest, but the reasoning in both types of approach clearly covers the problem here presented. A few of the expressions of other courts of the United States make this clear, as follows:

In *In re Fitch's Will,* 281 App.Div. 65 [118 N.Y.S.2d 234, 236 [3]], involving a general bequest of shares of corporate stock and, after execution of the will and prior to death, a three for one stock split, the general beneficiary received the equivalent number of shares. It was there said: ". . . merely because it has been held . . . that a specific legatee is entitled to the equivalent number of shares following a stock split, it does not necessarily also follow that the converse must be held that a general legatee is never entitled to such a benefit.

". . . What the testator intended to do is the ultimate aim in all will construction, and the rules that have been made are all bent in this direction. The intent, of course, is carried out if it is not unlawful."

*In re Vail's Estate,* (Fla.) 67 So.2d 665, 667: "That a stock

split-up is a mere change in form and not in substance, and that additional shares so acquired pass under a specific bequest of the original shares, is too well settled for contradiction.''

*In re Parker's Estate,* (Fla. App.) 110 So.2d 498, 501, 504: ''The technical distinction between general and specific bequests becomes important only when considering situations involving ademption, abatement or disposition of income earned on the subject of the bequest during administration.''

''For the purpose of our decision, however, it is immaterial in which category the bequest may fall. We are convinced that the stock split . . . effected a change only in the form of the shares of stock, and not in their substances.''

*In re McFerren's Estate,* 365 Pa. 490 [76 A.2d 759, 763, 22 A.L.R.2d 451] : ''The court below ruled that because a will is construed to speak and take effect as if executed immediately before the death '. . . *unless a contrary intention shall appear by the will'* [citations], the bequest of 50 shares of stock referred to 50 shares of the *exchanged stock* of the par value of $10. With this we do not agree. As the legacies were unquestionably *general,* the legatee is entitled to the stock or its value as contemplated *at the date of the will.* [Citations.] The legacies were not adeemed merely because of a change in corporate *form.* The change was clearly one of form and not of substance. While the will is only effective at death, the *intent* of the testator governs concerning the identity or value of the legacy. This is governed by the words of the will in relation to the surrounding circumstances. [Citations.] What the testatrix manifestly intended to bequeath to each legatee was 50 shares of the common stock of the corporation which she *then* owned. Such a change of form, but not of substance, will not defeat a manifest testamentary intent to bequeath to each legatee, by way of a *general* legacy, an equal one half share of the stock which she *then* owned in that corporation.''

In *Allen* v. *National Bank of Austin,* 19 Ill.App.2d 149 [153 N.E.2d 260], the court held, at page 265 [7] [153 N.E.2d], that in the absence of an intention to the contrary, a legatee of shares of stock is entitled to additional shares issued as the result of a stock split occurring after execution of the will. As to whether the bequest was general or specific, the court had this to say at page 263 [5-6] [153 N.E.2d] :

''In the instant case the estate is more than adequate to cover all bequests, and the rationale behind the classification of legacies is not pertinent for our purposes. Therefore, many of the cases in which these symbols have been used to character-

ize bequests are not germane to the instant case. In most cases where a stock split or stock dividend was involved, nothing more than lip service has been paid to the classification. Instead, courts have sought to find the intention of the testator, and almost always have found that the additions of stock in stock splits go to the legatee, as a consideration of the cases will reveal.''

*In re Rees' Estate,* 210 Ore. 429 [311 P.2d 438, 443-444], in discussing the contention of respondents therein that because the shares were not all called in for exchange but additional new shares were simply issued in order to bring up the total required by the stock split, the specific bequest would not include the additional shares and such additional shares would become a part of the residue of the estate, the court said:

''In our opinion, the respondents' argument is without merit for many reasons: (1) It gives a different and special status to stock of par value over stock of non-par value, even though in a specific bequest the non-par stock may include numerically the same number of shares in the same corporation and, at the time of split, have the same market value as the par value stock, if any; (2) It is a thesis contrary to the prevailing rule and the many cases cited in support of that rule; and (3) It is a proposition overemphasizing the importance of form in the implementation of the result at the expense of substance. In a stock split, whether of par value or non-par value stock, one purpose of the split is to divide the original holding in more units or multiples of the same value without disturbing the stockholder's original proportional participating interest in the corporation. . . .

''Respondents' argument overlooks the distinctive criterion for determining what a stock split actually is. It is essentially one of form and not of substance. . . . Stock certificates are not stock, but merely evidences the ownership of the stockholder's proportional interest in the corporation.'' See also *In re Jaynes' Will,* 3 Misc.2d 118 [154 N.Y.S.2d 89]; *In re Maher's Will,* 5 Misc.2d 135 [164 N.Y.S.2d 671]; 7 A.L.R.2d 281, note 5; 96 Corpus Juris Secundum 1000, note 4; 28 Ruling Case Law 344, paragraph 339.

We are satisfied that the few cases to the contrary, such as *Cuppett* v. *Neilly,* 143 W.Va. 845 [105 S.E.2d 548], and *Davis* v. *Price,* 189 Tenn. 555 [226 S.W.2d 290], are not only contrary to the rule adopted by the majority of the states, but are also not as well analyzed as those expressing the majority rule. There is considerable indication that the courts

in the Cuppett and Davis cases were following the "stock dividend" rule, which is a distinctly different rule based on different reasoning than the majority rule relating to "stock split" cases. We find nothing in any of the California authorities in conflict with the views we have herein expressed.

The order appealed from is reversed. Costs of both parties will be borne by the estate of decedent.

Coughlin, J., concurred.

A petition for a rehearing was denied August 1, 1961, and respondent's petition for a hearing by the Supreme Court was denied September 6, 1961.