[Civ. No. 7680.   Fourth Dist.   Jan. 27, 1965.]

Estate of KATHERINE H. SHANNON, Deceased. MAR-
GARET ROBINSON et al., Plaintiffs and Appellants,
v. ELISE HALL, Defendant and Respondent.

Block & Greer and David A. Block for Plaintiffs and Appellants.

Deane Haskins for Defendant and Respondent.

FINLEY, J., pro tem.*—This is an appeal by the daughter and two granddaughters of Katherine H. Shannon, deceased, who are income beneficiaries of a trust created under her will. The appeal is from a judgment construing portions of the will. The parties involved stipulated to all pertinent facts. There was no oral testimony so the appeal is based on the judgment roll alone.

The matter came before the trial court upon a petition of the executor, First National Bank of San Diego, to construe the will. The trust under which appellants are beneficiaries is delineated in paragraph first of the will. Respondent claims under paragraph fourth. These two paragraphs read as follows:

"*FIRST:* I give and bequeath to First National Trust & Savings Bank of San Diego, California, and its successors by merger, consolidation or otherwise, 1000 shares of the common stock of St. Regis Paper Company, 100 shares of the common stock of American Telephone & Telegraph Company, and 200 shares of common stock of General Motors Corporation, together with all shares of said stocks which may be issued after my death as the result of stock dividends or stock splits by said companies by reason of my ownership of said shares at the time of my death, In Trust, to hold, administer and distribute as follows:

"(a) The entire net cash income from said trust shall be paid to, or applied for the benefit of, my daughter, Margaret Robinson, in quarterly or other convenient installments, during her lifetime.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

"(b) After the death of my daughter Margaret, the entire cash income from said trust shall be paid in equal shares to, or for the benefit of, each of my two granddaughters, CAROLYN ROSS ROBINSON and MARGARET LEE ROBINSON, or the survivor of them, in quarterly or other convenient installments as long as they or either of them live. Upon the death of the survivor, the corpus of the trust estate shall be distributed in equal shares to the children of my daughter, ELISE HALL, or if any of them have died, leaving lawful issue him or her surviving, to such issue on the principle of representation. In the event there are no such children or issue, then to The Salvation Army, San Diego, California.

"(c) No part of the income or the corpus of the trust estate is to be paid to my grandson ELBERT W. ROBINSON, JR., or his issue.

". . . . . . . . . .

"FOURTH: I give, bequeath and devise all the rest, residue and remainder of my estate of every kind and nature and wheresoever situated to my daughter ELISE HALL, and if she is not living, then to such of her children, share and share alike, who are living at the time of my death. In the event there are no such children, then to The Salvation Army, San Diego, California."

Between October 17, 1955, the date the will was executed, and January 17, 1963, the date of decedent's death, two of the stocks enumerated in paragraph first of the will were split as follows:

1. November 7, 1955: General Motors stock was split three to one.

2. April 24, 1959: American Telephone and Telegraph stock was split three to one.

On May 13, 1960, Katherine H. Shannon executed a codicil to her will. In this codicil, after bequeathing certain personal effects to a friend, she revised paragraph second of her original will, wherein the trustee of the trust created in paragraph first is given certain directions in connection with its management of the trust. The changes made in paragraph second of this codicil are not material here. It is of interest to note however that in both paragraph second of the original will and in the codicil revision of this paragraph, the last sentence reads exactly the same, as follows: "Where the trustee shall have the option of receiving a dividend either in cash or shares, it *shall* elect to take the *shares*." [Italics added.]

Paragraph third of the codicil then reads: "*Third:* Except

as above provided, I hereby ratify, confirm and republish my said will executed October 17, 1955.''

The trial court, in its judgment interpreting the will, which of course includes the codicil, came to the following conclusion: ''By the terms of Article FIRST of decedent's Will, the decedent provided a gift in trust of 1,000 shares of the common stock of St. Regis Paper Company, 100 shares of the common stock of American Telephone and Telegraph Company, and 200 shares of the common stock of General Motors Corporation, and immediately following are the words: 'together with all shares of said stocks which may be issued after my death as the result of stock dividends or stock splits by said companies by reason of my ownership of said shares at the time of my death.' The Court interprets the intention of the Testatrix, as expressed in her Will, to give to the testamentary trustee shares of stock issued by the aforementioned companies through stock dividends or stock splits *after* the death of the Testatrix. The Court further interprets the intention of the Testatrix, as expressed in her Will, to give to the residuary beneficiary, under ARTICLE FOURTH, all shares of stock issued as a result of stock dividends, or stock splits *prior to* the death of the Testatrix.''

Respondent states in her brief that in this state there appear to be two lines of cases dealing with the question of the scope of review of a trial court's interpretation of a written instrument. On the one hand are cases such as *Estate of Helfman*, 193 Cal.App.2d 652 [14 Cal.Rptr. 482], which assert that where no extrinsic evidence has been introduced in connection with the instrument, the court on appeal can and should apply its own interpretation de novo notwithstanding the trial court's interpretation. Witness such cases as *Estate of Platt*, 21 Cal.2d 343 [131 P.2d 825], and *Estate of Wunderle*, 30 Cal.2d 274 [181 P.2d 874]. On the other hand, witness such cases as *Estate of Northcutt*, 16 Cal.2d 683 [107 P.2d 607]; *Lundin* v. *Hallmark Productions, Inc.*, 161 Cal.App.2d 698 [327 P.2d 166], and *Estate of Cuneo*, 60 Cal.2d 196 [32 Cal.Rptr. 409, 384 P.2d 1], in which latter case, quoting from *Estate of Northcutt, supra*, appears this statement: ''. . . [T]he rule is well settled that where the construction given to an instrument by a trial court is reasonable and appears to be consistent with the intent of the party making it, courts of appellate jurisdiction will not substitute another interpretation, even though it may seem equally ten-

able with that accorded by the trial court." (*Estate of North-cutt*, 16 Cal.2d 683, 690 [107 P.2d 607].)

Respondent suggests that "Some resolution of this problem is needed, both in the future guidance of would-be appellants and the harmonizing of decisions within California."

Unquestionably, this would be a most desirable state of affairs in all cases of conflicting authority if it could be accomplished. But a hard and fast stereotyped rule applicable to all situations would be most difficult to accurately formulate and the result would perhaps promote more unjust than just results. ■ Harmonizing conflicting decisions is of course a function of the Supreme Court. But since we must follow one horn of the suggested dilemma in deciding the present case, it will be in order to state our reasons for following the horn that we do follow and our reasoning in arriving at our conclusion.

The rationale of the cases cited in support of the rule giving preference to the findings of the trial court seems to be generally that where any extrinsic evidence is introduced, particularly oral evidence, which legally can and should be considered by the trial court, the trial judge is in a better position to analyze this evidence and declare the truth than is an appellate court which can only review a lifeless record. But much evidence in such a record is just as lifeless in the trial court as it is in the record on appeal. This is true where the evidence consists only of writings, without *oral* testimony, where appraisal of a witness giving oral testimony does not enter as a factor into the conclusion reached by the trier of fact. It is undeniable that an appellate court, reading the reporter's transcript of a witness' testimony is not in the same position of vantage to analyze and resolve questions concerning veracity, intelligence, accuracy of observation and recall and the many other factors that enter into a finding of fact or conclusion of law as is a trial judge. But where only the interpretation of written instruments is concerned, unaffected by extrinsic evidence, is not an appellate court, after studying the briefs on appeal, listening to the arguments of counsel, and thereafter engaging in a full discussion of the problem among the justices, in a more adequately informed position than is the trial judge and therefore better able to interpret the intent of the parties? Each case has its own particular distinguishing feature. The quantum, kind and quality of evidence is never the same in any two cases, as all lawyers and judges know. ■ We

conclude that in any case where extrinsic evidence is completely lacking or the quantum and quality thereof does not in reason place the trial judge in a better position to form an accurate interpretation of writings, or in other words, where interpretation is essentially a question of law rather than of fact, an appellate court is not bound by the determination of the trial court.

In the present case, there is no extrinsic evidence. The appeal is on the judgment roll alone. There is before us only the duty of reading the original will and codicil and placing our interpretation thereon in the light of, but not bound by, the interpretation of the trial court.

■ Respondent states in her brief: ''Will construction consists in the ascertainment of intention, and this intention is to be sought from the words of the will itself, where possible.''

Respondent continues then with a discussion of the use by the testatrix of the words ''after my death'' and ''at the time of my death,'' as it is claimed that the use of these words indicates intent. It is urged that because the testatrix made specific provision for the addition of stock split or dividend shares to the trust corpus after her death, this necessarily eliminates any reasonable deduction of similar intent as to stock splits or dividends occurring prior to her death. We cannot agree with this deduction.

Appellant Margaret Robinson and respondent Elise Hall are sisters. They are daughters of the testatrix. Considering this relationship, it would seem only reasonable to assume that when making her will, Katherine Shannon had in mind a definite plan of provision for her daughters and grandchildren (daughters of Margaret Robinson), based upon quantity or amounts rather than upon specific property. To this end she provided that the stock enumerated in paragraph first be placed in a trust fund to be administered by a trustee. She then proceeded to dictate how the remainder of her property should go. No language appears in the will at any point to indicate that she meant to leave Margaret Robinson and her daughters a lesser amount than that represented by the value of the stock set forth in paragraph first.

■ She provided in this same paragraph that any shares issued after her death as a result of stock dividends or stock splits should be added to the corpus of the trust. In paragraph second of both the original will and the codicil, she provided that: ''Where the Trustee shall have the option

of receiving a dividend either in cash or shares, it shall elect to take the shares.''

These were to be added to the trust corpus. This language in paragraphs first and second, taken together, give some indication at least that the testatrix intended to keep the corpus of the trust intact and to add to it through accretion of additional shares. There is no language in the will at any point which would lend itself to the interpretation that Katherine Shannon ever had any intention that the corpus of the trust should be reduced by any contingency during her lifetime or the life of the trust. Her apparent purpose was to provide an assured minimum income for her daughter and granddaughters. ▮ A will is to be construed according to the intention of the testator. (*Estate of Helfman, supra,* 193 Cal.App.2d 652.)

If, however, we are to accept the trial court's interpretation of the will, this purpose, that of keeping the income about the same and the corpus of the trust intact and growing, would be defeated. ▮ It is a matter of common knowledge, of which this court can take judicial notice, that when a stock is split so is the value per share in about the same ratio. ▮ Here, both the General Motors and the American Telephone and Telegraph stock were split three to one. The effect of this split was that three shares of stock represented the same claim to value of assets and dividend benefits as did one share before the split. Were we to hold that under the terms of the will Margaret Robinson and her daughters were still entitled to only the 100 shares of American Telephone and Telegraph and the 200 shares of General Motors, this would mean that the corpus of the trust originally envisioned by Margaret Shannon and provided in her will would be reduced to roughly one-third the value that it had when the will was made. We find nothing in the language of the will to support such an intent. It is true that in paragraph first the testatrix specifically provided that:

''All shares of said stocks which may be issued *after my death* as the result of stock dividends or stock splits. . . .'' were to be added to the corpus of the trust, but we are not persuaded that this language was used in the sense of limitation, but only in the sense that shares of stock issued after her death would come under the directions provided in her will and would be distributed according to those directions rather than being left to controversy and possible litigation. It apparently never occurred to her that during her lifetime

stock splits involving the corpus of her trust would not remain a part thereof as would stock splits or shares received as dividends after her death. See *Estate of Helfman, supra,* 193 Cal.App.2d 652, where it is held that after preparation of a will disposing of stock, but before the testator's death, there was a stock split, three to one, as in this case, the legatees were entitled to the total amount of shares represented by the shares named in the will.

We do not find that in adopting an interpretation which is not in harmony with that of the trial court we are in conflict with any of the decisions brought to our attention concerning rules of interpretation. In *Estate of Northcutt, supra,* 16 Cal.2d 683, the court found that: ". . . the construction placed by the probate court on the terms of the will is not unreasonable."

That case does not decide what the result would have been had the court viewed the construction placed upon the will by the probate court to have been otherwise. In *Estate of Cuneo, supra,* 60 Cal.2d 196, the court was concerned not with the interpretation of a will, but with the question of whether instruments offered for probate actually constituted a will. In that case the judgment admitting a will to probate was reversed with directions. We are aware of no decision holding that where no extrinsic evidence is involved an appellate court is bound by a judgment of the trial court to adopt what it considers to be a less reasonable interpretation in lieu of one it considers to be more reasonable. In this action we are of the opinion that reason dictates an interpretation which will secure to the beneficiaries that which the testatrix originally provided, and not an eroded value such as would result from the trial court's interpretation.

The judgment is reversed.

Griffin, P. J., and Coughlin, J., concurred.

A petition for a rehearing was denied February 11, 1965, and respondent's petition for a hearing by the Supreme Court was denied March 30, 1965. McComb, J., and Peters, J., were of the opinion that the petition should be granted.