[Civ. No. 13686.   Second Dist., Div. Three.   Dec. 31, 1942.]

Estate of FRANCES R. CHAMBERLAIN, Deceased. MILDRED JORDAN, Appellant, v. HENRY CHAMBERLAIN et al., Contestants; CHARLES H. ENGLISH et al., Respondents.

Howard F. Shepherd for Appellant.

Nourse & Jones and Paul Nourse for Respondents.

SHINN, Acting P. J.—This is an appeal from an order made in probate upon a petition to determine heirship and to review the trial court's construction of a will which differs in some respects but not in others from a construction which was held to be erroneous upon a former appeal. (*Estate of Chamberlain*, (1941) 46 Cal.App.2d 16 [115 P.2d 235].)

At the time of the death of Frances R. Chamberlain her estate consisted of the following property: (1) Cash in safe deposit box and currency, $23,822.00; (2) Cash in bank account, $638.54; (3) Real property known as 11150 South

Figueroa, appraised at $2,500; (4) United States Bonds, appraised at $6,994; (5) Trustee's certificate $1,000 issued by Union Bank & Trust Company, appraised at $750; (6) Ten shares Bullock's, Inc., stock, appraised at $970; (7) Taft Building Land Trust Certificate No. 716, appraised at $900; (8) Interest income certificate No. D-125,215 for $10,062.58, issued by Mutual Benefit Life Insurance Company of Newark, N. J., appraised at $10,204.79; (9) Credit balance payable to Frances R. Chamberlain by Chamberlain Syndicate, appraised at $4,021.85; (10) Sundry items of tangible personal property which was specifically bequeathed; and (11) other tangible personal property. By the will provision was made for certain "cash" disbursements and for the division of the remaining "cash" between Charles H. and Horace B. English and Dorothy English Sampson, hereinafter referred to as the next of kin, and the residuary estate was left to Mildred Jordan. The controversy is between the next of kin and the residuary legatee. At the time the first order was made, the estate consisted of the following: (a) Cash on hand at the date of death, items 1 and 2; (b) Cash which had been received from item 8; (c) Cash received from item 5; (d) Cash received from item 9; (e) Item 3, which the court ordered sold in accordance with the provisions of the will, which directed its conversion into cash; (f) Tangible personal property which was specifically bequeathed, item 10; (g) The tangible personal property which the court found passed under the residuary clause to Mildred Jordan, item 11; (h) Government bonds of the face value of $6,500, item 4; (i) Ten shares of Bullock's, Inc., item 6; (j) Taft Building Land Trust Certificate, No. 716, item 7, evidencing an undivided beneficial interest under trust created as to certain real property. The order gave the next of kin items a, b, c, d, e, h, i, and j, and to various distributees item f, and to Mildred Jordan item g.

Upon the former appeal it was held, first, that the will provided that the residuary estate should go to Mildred Jordan and not to the next of kin, and, second, that the trial court erred in holding that the word "cash" included "United States bonds, shares of stock, etc." When the matter came up in the trial court some additional testimony was taken and the court made new findings and a new order and held that the next of kin were entitled to receive in addition to money

bequests (1a) $1,800 received by the executor from the sale of a parcel of real property (item 3 above); (2a) cash received by the executor from the life insurance company (item 8) listed above; (3a) cash received by the executor from the Chamberlain Syndicate (item 9) listed above, and (4a) balance of money remaining in hands of executor for final distribution after payment of debts, expenses of administration and specific money legacies.

Mildred Jordan was awarded specific personal property not here involved and United States bonds (item 4 above); Trustee's certificate (item 5 above); Ten shares Bullock's, Inc. (item 6 above); Taft etc. certificate (item 7 above), and all other property not described in the findings.

Of the awards made to the next of kin, we think numbers 1a, 3a and 4a were erroneous and that item number 2a (money on deposit with the life insurance company) was properly awarded to them.

The will recited that there were no debts, recognized that there would be expenses of last illness and funeral expenses, as well as expenses of administration, made certain money bequests, and provided, "After paying these amounts—and amts. due for administrator and attorney, whatever remains of cash—shall be devided between Charles English—Horace English—Dorothy Sampson—children of my deceased sister, share and share alike." There was no provision for the conversion of any of the property into cash other than the real property presently to be discussed. ▮ Unless a different intention finds expression in the will, it should be construed as applying to and disposing of the estate in its condition at the time of death. In the present case nothing appears in the will to indicate that Charles and Horace English and Dorothy Sampson were to receive anything more in the way of cash than the amount on hand at the date of death, (or immediately thereafter, as hereinafter noted) less amounts first to be paid therefrom. Had it been the intention of the testatrix to give them any greater sum in the way of cash residue, such as might be received from sales of property or the collection of debts, the will, we must presume, would have so provided. Surely it could not have been the intention of Mrs. Chamberlain to vest the executor with power to sell all of the property not specifically disposed of and to distribute the proceeds among the next of kin. Even if it had

been a fact that the property which Mrs. Chamberlain considered to be "cash" was at date of death insufficient to pay the sums directed to be paid therefrom and that none of the original cash remained for the next of kin, that would not prove that she intended that money received during the administration from sales or collections should be added to the "cash" that was on hand at the date of death. It is to be presumed that she had in mind at all times the amount of cash which she had on hand and the terms of her will as well. If no cash residue had remained for these three beneficiaries it would have been because of the voluntary actions of the testatrix.

The single parcel of real estate was sold for $1,800 and this sum was treated by the trial court as if it had been cash on hand at the date of death. The provision of the will respecting this item of property read as follows: "My property located at 11150 So. Figueroa to be sold—proceeds to become a part of the residuary of my estate . . ." As previously stated, it was held on the former appeal that the residuary estate goes to Mildred Jordan. The clear provision is that the proceeds of the sale were to become a part of the residuary estate rather than a part of the residuum of cash that might remain for division among the next of kin, and the sum of $1,800, or such portion of it as remains, therefore goes to Mildred Jordan.

The court treated as cash and as if it had been on hand at the time of death the amounts of two legacies aggregating $600, the legatees having predeceased Mrs. Chamberlain. The provision of the will with respect to lapsed bequests reads as follows: "With the exception of Charles English and Horace B. English, nephews, all bequests become part of residue should death come first to the beneficiary." This sum, or such portion thereof as remains for distribution, would go to Mildred Jordan as residuary legatee and not to the next of kin.

During the administration the executor received the sum of $4,021.85 from property held in a trust which was known as the Chamberlain Syndicate and which had been created October 10, 1920, by a declaration of trust under which there was payable to Frances R. Chamberlain her proportion of the net income, namely, 10/67ths, derived from the trust property during her lifetime. This sum also the court treated

as if it had been cash in the hands of Mrs. Chamberlain at the time of her death. The syndicate owned 95 percent of the capital stock of Los Angeles Foundry Company, a corporation, which had had earnings in the year 1937 which would have been subject to federal tax if undistributed. The profits were distributed to the stockholders, including the syndicate, but the distribution left the working cash of the corporation depleted. The several beneficiaries of the syndicate or trust were given book credit for their respective shares of these dividends received from the corporation, but the money was loaned back to the corporation, which executed its notes to the syndicate; as these notes were paid the money received was distributed to the beneficiaries of the trust. Mrs. Chamberlain, as one of the beneficiaries, therefore, held a beneficial interest in the promissory notes of Los Angeles Foundry Company which were payable to the syndicate and which represented income of the syndicate. The amount of $4,021.85 was her share of the unpaid balance of sums that had been loaned to the corporation. During the administration the corporation paid its notes to the trust and the sums received were ratably distributed among the beneficiaries, the executor receiving the estate's share. The trust indenture read in part, "In so far as possible said trustees shall distribute said net income [90% of the annual net income of the trust] to the persons named in subsection 2, semi-annually, but said trustees shall be the sole judges of the amount to be distributed and of the time therefor." At the time of Mrs. Chamberlain's death the trustees had on hand only about $800, but it does not appear that this was subject to distribution among the beneficiaries at that time. The evidence was that the trust could have made a distribution to its beneficiaries of the amounts of their book credits at any time but only by selling some of its property.

We are of the opinion that this credit was not cash as that term was used in the will. ▪ Solvent credits are not cash in the ordinary understanding of the latter term. Upon the former appeal it was said, "Cash is 'current money in hand or readily available.'" (46 Cal.App.2d 16, at p. 20.) The court there approved of another definition reading, "'Cash' means especially 'ready money' at command, subject to free disposal; not tied up in a fixed state. It is almost the equivalent of 'loose money'." Bouvier's Law Dictionary, Rawles'

3d edition, defines ''cash'' as ''That which circulates as money, including bank bills but not mere bills receivable.'' The money represented by the notes of the corporation and also by the book credits was available for distribution to the beneficiaries not upon demand but upon its receipt by the trust from the corporation and upon the decision of the trustees to make distribution. How or when the corporation's notes to the syndicate were payable does not appear. ■ Promissory notes cannot be treated as cash in the construction of a will except where the language of the will shows that the testator considered them to be cash and disposed of them as such. Otherwise, as held on the first appeal, the word ''cash'' should be given its common and ordinary meaning. Accordingly, the sums received by the executor from the syndicate after Mrs. Chamberlain's death should not go to the next of kin under the will but to Mildred Jordan as residuary legatee.

■ A final item is the cash received by the executor from Mutual Benefit Life Insurance Company in the sum of $10,062.58. The question whether this sum should be treated as cash in hand at the time of death calls for a consideration of the contract with the company and the rights of Mrs. Chamberlain and of her estate thereunder. Upon the death of Lee Chamberlain, former husband of Frances, on November 9, 1938, she became entitled to receive in cash as proceeds of a life insurance policy $10,062.58. The company issued its certificate dated May 9, 1939, which stated that it had been agreed that said proceeds should be retained by the company at interest from February 9, 1939, payable quarter-annually to Frances R. Chamberlain, provided she be living as the respective installments became due. To the interest earned were to be added such annual dividends as might be apportioned by the company. The certificate provided as follows: ''Upon receipt at the company's office in Newark, New Jersey, of due proof of the death of Frances R. Chamberlain, the said proceeds, amounting to Ten Thousand Sixty-Two Dollars and Fifty-Eight Cents, together with any unpaid accretions thereon, shall be payable immediately to the executors, administrators or assigns of Frances R. Chamberlain. Subject to the right of the Company to require three months' notice in writing, Frances R. Chamberlain may at any time withdraw the amount upon which she

may then be entitled to receive interest payments. If Frances R. Chamberlain shall exercise this right of withdrawal, the liability of the Company shall thereupon cease and determine.'' It seems to us that the court correctly decided that the sum payable under this certificate was cash within the meaning of the will. There was the same right to withdraw the funds on deposit as a depositor has to withdraw funds from a savings account in a bank, that is to say, on demand unless the bank (here the insurance company) should stand upon its right to require notice of the intended withdrawal. It is true that the certificate evidenced a debtor-creditor relationship between the bank and the certificate holder, but that is the relationship between a bank and its depositor and yet money in bank is regarded as cash throughout the business world and bank checks duly honored are treated as cash, even though they are only the passing of credits to the payees.

It was not questioned in the trial court and is not questioned here that the sum of $638.54 on deposit in a bank subject to check was cash within the meaning of the will.

The greatest concern of the court in the construction of a will is to ascertain the intent of the testator and to give effect to it, if possible, and when we recall the nature and condition of Mrs. Chamberlain's estate at the time the will was written we must not overlook the fact that the money on deposit with the life insurance company was not only payable on demand (with possibly some delay) but it was payable to her estate immediately upon proof of her death. With no further action than that, the cash in the hands of her executor would be increased to the extent of $10,062.58. The money would be withdrawn as a deposit rather than collected as a debt, very much in the same manner as funds in bank would be transferred to an executor upon filing with the bank of a certified copy of letters testamentary. We cannot distinguish between money on deposit in bank and money on deposit with a life insurance company subject to withdrawal and payable to the estate of the depositor upon his death, in determining what was intended and what was not intended by Mrs. Chamberlain by the use of the word ''cash.'' Manifestly the word cannot be given a definition that will fit all cases, particularly in the case of wills, where the sense in which it is used by the testator is controlling. It has been held proper to consider as cash sums of money

which are due a testator and which are so mentioned in his will as to show that he expects to receive them before the will becomes operative. (*Estate of Carrillo*, (1921) 187 Cal. 597 [203 P. 104].) We think the same can be said of sums such as the life insurance money, which the testatrix knew would immediately upon her death be payable to her estate. We think it is clear that the life insurance asset should be distinguished from the credit on the books of the Chamberlain Syndicate, which latter involved the collection of a debt owing to the syndicate and also the conditions of the affairs of the corporation and the syndicate from time to time, either of which might have been such as to cause the trustees to defer indefinitely the collection of the notes or the distribution of the money as it should be collected. It is a comparison of all of the features of the two assets and the similarity of a life insurance deposit to a bank deposit which, in our opinion, force the conclusion that the life insurance asset was cash within the meaning of the will and should go to Charles and Horace English and Dorothy Sampson, as the will provides, and not to Mildred Jordan, and it is because the credit with the syndicate had the characteristics of an ordinary debt payable to Mrs. Chamberlain rather than a deposit of money payable on demand, and because there was nothing in the will indicating that the testatrix regarded it as the equivalent of cash in hand, that we take the other view as to that item. The certainty of prompt payment in the one case and the uncertainty in the other, with respect at least to the time of payment, must have been known to and considered by Mrs. Chamberlain in making testamentary disposition of the cash that would be in her estate.

We think there is nothing in the conclusions which we have reached which is in conflict with the holding of the District Court of Appeal upon the former appeal. The court there said (46 Cal.App.2d 16, at p. 20) : "From the foregoing it is evident that the trial court erred in holding that the word 'cash' included United States bonds, shares of stock, etc." We have no reason to believe from a study of that opinion that the court had in mind a construction of the will in any respect different from our own.

The order is reversed and further proceedings are directed to be had in conformity with the views stated herein.

Wood (Parker), J., and Shaw, J. pro tem., concurred.