[Civ. No. 22207. First Dist., Div. One. Dec. 3, 1965.]

Estate of CHARLES CHRISTEN, Deceased. ALEX CHRISTEN et al., Plaintiffs and Appellants, v. EDWARD A. SCHUERT, as Administrator With the Will Annexed, etc., et al., Defendants and Respondents.

Russell T. Ainsworth and Donald J. Sullivan for Plaintiffs and Appellants.

A. B. Broaddus for Defendants and Respondents.

MOLINARI, J.—Appellants, as the brothers and sisters and heirs at law of decedent, Charles Christen, appeal from the judgment granting the petition of the administrator with the will annexed for distribution of decedent's estate, after the payment of legacies, to Father Flanagan's Boys' Home, a Nebraska corporation (hereinafter sometimes referred to as "Boys' Home"), and denying their objections thereto and their petition for distribution to themselves as decedent's heirs at law.

### Questions Presented

1. Does the residuary clause of decedent's will validly bequeath the residue of his estate to "Father Flannagans Boys home. . . ."?

2. Are the proceeds of a bank account which decedent held in joint tenancy at the time of the execution of his will subject to the provisions of his will where he was predeceased by the joint tenant?

3. Is the claimant corporation, Father Flanagan's Boys' Home, the residuary legatee referred to in decedent's will as "Father Flannagans Boys home. . . ."?

### Statement of the Case

Charles Christen died testate June 3, 1957. His holographic will, which was dated July 7, 1948, provided as follows: "After all bills are paid I will to Alex Christen, Leo Chris-

ten, Mary Schuert and Bertha Wyckoff $10.00, ten dollars each. Everything else I have or have an interest in or have a revenue of to Joseph P. Kelly or Father Flannagans Boys home, or the survivor of them. Except what has or maybe [*sic*] deeded away or disposed of in some other way. The last two mentioned may be the executor or anyone they choose with out [*sic*] bonds. Charles Christen''

Following the admittance of decedent's will to probate and the appointment of Edward A. Schuert as administrator with the will annexed (Joseph P. Kelly having predeceased testator), appellants filed a will contest which they subsequently dismissed voluntarily. Meanwhile, the administrator filed his petition for final distribution requesting that $10 be distributed to each of the four named legatees (decedent's brothers and sisters) and that the residue of decedent's estate be distributed to Father Flanagan's Boys' Home.[1] To this petition appellants filed objections and petitioned for distribution of the residue of decedent's estate to themselves as decedent's heirs at law. Appellants' objections to the administrator's petition concerned the validity of the residuary clause of decedent's will and the identification of the residuary legatee (the first and third issues raised by appellants on this appeal). At this time the trial court determined that the residuary clause was valid and set for hearing the issue of whether Father Flanagan's Boys' Home was the legatee mentioned in the will. Appellants then filed an additional objection to the administrator's petition for distribution, asserting that decedent's will did not operate as to the proceeds of a bank account which was in existence in the name of ''Jos. P. Kelly or Charles Christen'' at the time decedent executed his will. Thereafter, at a hearing in which appellants and Father Flanagan's Boys' Home participated, it was stipulated that the following documents be introduced into evidence: the signature card, ledger card, and passbook for the subject account; a ''Deposition in Behalf of Defendant Father Flanagan's Boys' Home''; and the articles of incorporation of this organization. Based upon this evidence, the trial court found that Father Flanagan's Boys' Home was the residuary legatee named in decedent's will; that decedent's will disposed of his entire estate and that it was not his intention to except the proceeds of the bank account from disposition under his will; and that since Kelly prede-

---

[1]The petition also stated that decedent's estate had been appraised at $137,392.58.

ceased decedent, Father Flanagan's Boys' Home was entitled to take the residue of decedent's estate, including the proceeds of the subject bank account.

### The Validity of the Residuary Clause of Decedent's Will

Appellants' first contention relates to the provision in decedent's will that the residue of his estate is to go to "Joseph P. Kelly or Father Flannagans Boys home, or the survivor of them." Appellants argue that this "disjunctive gift . . . is void on the face of the will for uncertainty."

The precise question has not heretofore been presented to our appellate courts. In *Schade* v. *Stewart,* 205 Cal. 658 [272 P. 567], a deed naming "the 'heirs or devisees of Jennie C. Hurd, deceased,' " as grantees, was delivered to the executrix while the will of Jennie C. Hurd was still in the course of probate. (P. 659.) In holding that the deed was not void for uncertainty in the designation of a grantee, our Supreme Court, applying the rule that "That is certain which can be made certain" (Civ. Code, § 3538), held that the deed furnished intrinsic evidence of an intent to vest title in the persons entitled to succeed to the property, whether as devisees and legatees under the will of the decedent or as heirs if the will was held to be invalid. In reaching its decision, the reviewing court recognized the common law rule that " 'a grant made to J. S. or W. S. in the disjunctive, is void for uncertainty,' " but applied the reasoning in *Ready* v. *Kearsley,* 14 Mich. 215, where a deed to " 'S or his heirs' " was upheld. (P. 664.) In *Ready,* the appellate court, holding that the manifest intent in the case before it was to vest title in S., if living, or in his heirs or devisees, if he were then dead, noted that while a deed to J. S. or W. S. is void from the manifest impossibility of determining which shall take when the grantor has failed to express his intent, no such difficulty arises in the case of a grant to J. S. or his heirs because if J. S. is living he has no heirs and no two parties can claim adversely as grantees under the deed.

In *Estate of Brunet,* 34 Cal.2d 105 [207 P.2d 567, 11 A.L.R.2d 1382], the testator by will devised specific property " 'To Otto Speckter or his Estate. . . .' " (P. 106.) Speckter died before the testator. In holding that the devise did not lapse, the Supreme Court stated that "The testator's use of the disjunctive 'or' clearly denotes an intention to substitute an alternative taker in the event Speckter predeceased

him'' (p. 107), and that such alternative taker was intended to mean Speckter's devisees or heirs. In reaching its decision the reviewing court applied the rule that ''The objective in the interpretation of a will is to ascertain the intention of the testator as disclosed by the language he has used'' (p. 107), and the following rules of construction: (1) '' 'The words of a will are to receive an interpretation which will give to every expression some effect, rather than one which will render any of the expressions inoperative' '' (Prob. Code, § 102); and (2) '' 'Whenever a disputed word or phrase may be reasonably given either of two meanings, that meaning should be given which will prevent intestacy. . . .' '' (P. 109.)

█ Upon the analogy of the foregoing cases, the application of the rules utilized in *Brunet,* the application of the rules that a will is to be construed according to the intentions of the testator as of the date of the will's execution (Prob. Code, § 101; *Estate of Carter,* 49 Cal.App.2d 251, 254 [121 P.2d 540]; *Estate of Turney,* 101 Cal.App.2d 720, 726 [226 P.2d 80]), and unless a contrary intention appears on the face of the will a will is to be construed according to conditions existing at the time of the testator's death (95 C.J.S., Wills, § 629, p. 891; 57 Am.Jur., Wills, § 1209, p. 795; *Estate of Helfman,* 193 Cal.App.2d 652, 655 [14 Cal.Rptr. 482]; *Estate of Chamberlain,* 56 Cal.App.2d 458, 461 [132 P.2d 488]), we are led to the conclusion that decedent in the instant case meant that if Kelly predeceased him the residue of his estate was to go to ''Father Flannagans Boys home. . . .'' While it is not clear what decedent intended as to the division of the residue of his estate in the event that both named residuary legatees survived him,[2] the will explicitly and unambiguously provides that if he is survived by only one of the two named legatees, the residue of his estate should pass to such survivor. Accordingly, since decedent's intentions as to the disposition of the residue of his estate in the event that only one of the named legatees survived his death is so clearly expressed in his will, and since such were the conditions existing at the time of his death, we conclude that distribution of such residue must be made in accordance with this expressed intention. We need not concern ourselves,

---

[2]There is authority to the effect that the word ''or'' will be construed as ''and'' where necessary to carry out the intent of the testator. (See 95 C.J.S., Wills, § 613(b), pp. 817, 820; and 57 Am.Jur., Wills, § 1154, p. 752; and see *Schade* v. *Stewart,* 205 Cal. 658, 664-665 [272 P. 567]; see also *Dalton* v. *Keers,* 213 Cal. 204, 207-208 [2 P.2d 355].)

therefore, with the abstract and academic question as to what decedent intended by his use of the disjunctive "or" in the residuary clause since, as stated in *In re Gorsch's Estate,* 103 Misc. 156 [169 N.Y.S. 1064, 1066], "Courts of construction will not proceed to pass upon questions which are abstract or academic, or in anticipation of events or conditions which may never materialize."

It should be here pointed out that there is no merit to respondents' suggestion that the court below "has construed the bequest as being to Joseph P. Kelly and Father Flanagan's Boys' Home or the survivor, making a joint tenancy with right of survivorship." The trial court made no such finding or conclusion but predicated its decision, as we have, upon an interpretation of the will in ascertaining the intention of decedent as disclosed by the language he used. Moreover, in order to create a joint tenancy interest in property by will or transfer, the instrument must *expressly* declare the interest to be a joint tenancy. (Civ. Code, §§ 683, 686; *Dalton* v. *Keers,* 213 Cal. 204, 207-208 [2 P.2d 355]; *Estate of Hittell,* 141 Cal. 432, 435 [73 P. 53].) In the present case the will did not declare that a joint tenancy interest was created in Kelly and "Father Flannagans Boys home. . . ."

*The Applicability of Decedent's Will to the Proceeds of the Bank Account Formerly Held by Decedent in Joint Tenancy*

The second point which appellants raise on appeal concerns the trial court's determination that the bank account which decedent formerly held in joint tenancy passed under the residuary clause of decedent's will. The undisputed facts concerning this bank account are as follows: the account in question, which was a savings account (No. 2861) in the Fort Bragg Branch of the Bank of America, was a joint tenancy account between decedent and Kelly; the account was opened on May 31, 1946 and was thus in existence at the time decedent executed his will; however, as previously indicated, Kelly died on April 8, 1957, subsequent to the date on which decedent executed his will but prior to decedent's death; at the time of decedent's death the account contained $50,026. As to this account, it is appellants' contention that "the testator expressly excepted . . . [it] from his gift to Kelly or Boys home by the provision in his will excepting from that gift 'what has or maybe [*sic*] deeded away or disposed of in some other way.'"

Two rules of construction favor respondents' position as to this issue. First, we reiterate the rule that of two

modes of interpretation, that which will prevent intestacy, either total or partial, is preferred. (Prob. Code, § 102; *Estate of Schuster*, 137 Cal.App.2d 125, 130 [289 P.2d 847]; *Estate of O'Brien*, 74 Cal.App.2d 405, 408 [168 P.2d 432]; *Estate of Moore*, 219 Cal.App.2d 737, 741 [33 Cal.Rptr. 427]; *Estate of Hartson*, 200 Cal.App.2d 757, 765 [19 Cal.Rptr. 694]; *Estate of Karkeet*, 56 Cal.2d 277, 281-282 [14 Cal.Rptr. 664, 363 P.2d 896].) This rule has specific applicability to residuary clauses, which, it has been held, are to be broadly and liberally construed with a view to preventing intestacy as to any part of the testator's estate. (*Estate of Rollins*, 163 Cal.App.2d 225, 227 [328 P.2d 1005]; *Estate of Moore*, 190 Cal.App.2d 833, 839 [12 Cal.Rptr. 436]; *Estate of Deacon*, 172 Cal.App.2d 319, 322 [342 P.2d 261].) ▮ Furthermore, the presumed intent of the testator to avoid intestacy is fortified where the will specifically excludes the testator's relatives from sharing his estate. (*Estate of Plumer*, 159 Cal. App.2d 389, 393-394 [324 P.2d 346]; *Estate of Bateman*, 205 Cal.App.2d 792, 795 [23 Cal.Rptr. 445].) ▮ A second constructional rule which favors respondents' position as to the disposition of the subject bank account is the rule which favors that construction of a particular provision which is in harmony with the dominant purpose and testamentary scheme of the testator. (*Estate of Hollingsworth*, 37 Cal.App. 2d 432, 435 [99 P.2d 599]; *Estate of Nathan*, 89 Cal.App.2d 789, 793 [201 P.2d 865].)

▮ In the application of these two rules to the facts before us, we note initially that appellants' desired construction of the subject will would produce a situation in which $50,026, or almost one-half of decedent's estate, would pass by intestacy rather than by the provisions of his will. We note also that decedent's will specifically bequeathed the sum of $10 to each of his relatives who would stand to inherit the proceeds of the bank account if such proceeds were excepted from the terms of the will. It is also apparent from a reading of the entire will that decedent intended to avoid partial intestacy and that his dominant purpose was to limit the legacies in favor of his relatives to the amount specified and to have the residue of his estate go to either Kelly or the "Boys home."

The subject provision has obvious reference to such part of decedent's estate as he may have effectively and finally disposed of during his lifetime. The creation of the joint tenancy in the subject bank account had the effect of making

decedent and Kelly the joint owners of such account with the right of survivorship to the title thereof at the death of either of them. (Fin. Code, § 852; Civ. Code, § 1828; *Paterson* v. *Comastri*, 39 Cal.2d 66, 71 [244 P.2d 902]; *Jorgensen* v. *Dahlstrom*, 53 Cal.App.2d 322, 332 [127 P.2d 551].) Accordingly, upon the death of Kelly title to the subject bank account vested in decedent without regard to the original ownership of the monies on deposit therein prior to the creation of the joint tenancy account.

We thus have a situation wherein, at the time the instant will was executed, the subject bank account was under the joint ownership of Kelly and decedent but thereafter ripened into the sole ownership of decedent by reason of Kelly's death. Such sole ownership was the status of the proceeds of the subject bank account at the time of decedent's death.

■ Accordingly, in the light of the rules of construction hereinbefore discussed, the trial court was properly called upon to invoke the rule that, unless a different intention finds expression in the will, it should be construed as applying to and disposing of the estate in its condition at the time of death. (*Estate of Helfman, supra,* 193 Cal.App.2d 652, 655; *Estate of Chamberlain, supra,* 56 Cal.App.2d 458, 461.) ■ We conclude, therefore, that since the subject provision is ambiguous as to the time of which it speaks, and since a determination that it speaks as of the time of decedent's death is the more favorable one in the terms of preventing a partial intestacy and effectuating decedent's dominant purpose, the decision of the trial court to the effect that the subject bank account is part of decedent's estate and passes pursuant to the residuary clause of decedent's will must be upheld.

The case of *In re Pearsons,* 99 Cal. 30 [33 P. 751], relied upon by appellants, is clearly distinguishable. There the will specifically provided in clause 2 that the testator devised to his two aunts or the survivor of them " 'all real property which I hold jointly with them' " (p. 31), and provided that if both of the aunts predeceased him the lands should be sold at public auction and the proceeds distributed to designated charities. In clause 3 he devised all of his real property, excepting that portion which he held jointly with his two aunts " 'and which has hereinbefore been bequeathed to them,' " to one Isabella Kinsey. (P. 32.) The property jointly held was a portion of a city block the remainder of which was owned solely by the testator. Both of his aunts

predeceased the testator so that at the time of his death the fee in the property which he had held jointly with his two aunts had vested in him. In holding that the testator manifestly intended to and did except from the devise to Mrs. Kinsey that portion of the block which by clause 2 the testator had devised to his aunts, the Supreme Court followed the rule that where a testator refers in his will to an actually existing state of things at the time of a will's execution, the language must be held to refer to the date of the will and not to the date of the testator's death, and the provisions must be construed with reference to the circumstances by which he understood himself to be surrounded and the conditions present in his mind when the will was written. The rationale of the reviewing court was that since the language specifically excepting the jointly held property from clause 3 referred to circumstances and conditions existing at the time the testator executed his will, this language showed plainly that the testator did not intend to devise to Mrs. Kinsey the whole of his interest in the block. In the instant case the will did not refer " 'to an actually existing state of things' " (p. 34), but merely referred in broad language to "what has or maybe [*sic*] deeded away or disposed of in some other way." While this language is susceptible of the interpretation that decedent may have intended that the subject bank account which he owned jointly with Kelly was to go to Kelly by virtue of joint tenancy survivorship rather than by virtue of the will, there is nothing in the language of the will referring to circumstances and conditions at the time of the will's execution so as to indicate that decedent intended to exclude the proceeds of the bank account from the purview of the will in the event he survived Kelly.

### The Identity of the Residuary Legatee
### Named in Decedent's Will

With respect to appellants' contention that Father Flanagan's Boys' Home, the claimant under decedent's will, is not in fact the beneficiary named in the will, the record discloses that the trial court, upon stipulation of the parties, admitted the following extrinsic evidence: (1) a certified copy of the articles of incorporation of Father Flanagan's Boys' Home. These articles state that "The object for which this corporation is organized shall be to equip, maintain and conduct in the City of Omaha a home for indigent and wayward boys; to support and educate boys in said home and to equip and prepare them to lead useful lives." In addition,

the articles authorize the corporation to "have and conduct such homes, asylums, farms and places of education at such places either in the City of Omaha or elsewhere as it may deem necessary and advantageous to the causes of charity, morality and education"; (2) a "Deposition in Behalf of Defendant Father Flanagan's Boys' Home," including (a) the testimony of an employee of Boys' Home to the effect that Father Flanagan was the founder and active managing officer of Boys' Home until his death on May 15, 1948 and that he was succeeded as managing officer in the fall of 1948 by Father Wegner; (b) a copy of Boys' Home records of the various donations made to it by decedent and by Kelly prior to decedent's death; and (c) copies of correspondence between decedent and/or Kelly and Father Flanagan's Boys' Home, the correspondence to Boys' Home being addressed either to Father Flanagan (letters dated June 1, 1945 and December 5, 1945), Dear Father (letter dated May 28, 1953), or Father Flanagan's Boys' Home (letters dated May 26, 1954 and May 17, 1956), and those to decedent or Kelly being signed either by Father Flanagan or by Father Wegner. Most of this correspondence related to the various gifts made by decedent and by Kelly to Boys' Home, and three in particular were inquiries and a response relating to testamentary gifts to charity and to Boys' Home specifically.

Based on this evidence the trial court found that Father Flanagan's Boys' Home was the legatee named in decedent's will. It is well settled that where extrinsic evidence is admitted by the probate court in determining the testator's intention as to certain language contained in his will and the trial court's findings are substantially supported by this extrinsic evidence, the trial court's determination on this issue cannot be disturbed on appeal. (*Estate of McDonald,* 191 Cal.App.2d 565, 571 [12 Cal.Rptr. 823]; *Estate of Doody,* 204 Cal.App.2d 419, 426 [22 Cal.Rptr. 264].) Accordingly, since the extrinsic evidence produced by respondent Boys' Home unequivocally shows that decedent, for a period of years prior to his death, had been corresponding with and donating to the same Father Flanagan's Boys' Home which claims to be the legatee under his will, it is apparent that the trial court's determination that the claimant was the intended beneficiary under decedent's will and is therefore entitled to take the residue of decedent's estate must be upheld on appeal. Appellants' contention that the evidence shows that Boys' Home was unknown

to decedent and that decedent had no contact with it, but rather dealt solely with Father Flanagan, is simply contrary to fact. As the exhibits contained in the deposition indicate, decedent made numerous donations to Boys' Home, eight of which were made after the death of Father Flanagan. Moreover, decedent continued to correspond with Boys' Home for many years after the death of Father Flanagan. Finally, we note that Father Flanagan died on May 15, 1948 whereas decedent's will was executed on July 7, 1948. The fact, therefore, that Father Flanagan was not alive when decedent executed his will makes it additionally clear that Boys' Home, as an institution, and not Father Flanagan, as an individual, was the intended residuary beneficiary under decedent's will.

The judgment is affirmed.

Sullivan, P. J., and Sims, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 26, 1966.