ALEXANDER AND JOSIE R. HARTLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Hartley v. Commissioner
Docket No. 33248-87
United States Tax Court
T.C. Memo 1990-14; 1990 Tax Ct. Memo LEXIS 14; 58 T.C.M. (CCH) 1152; T.C.M. (RIA) 90014; January 9, 1990
Mary Nelson Louishomme, for the petitioners. Donald L. Wells, for the respondent. BUCKLEY
MEMORANDUM FINDINGS OF FACT AND OPINION BUCKLEY, Special Trial Judge: This case was heard pursuant to section 7443A of the Internal Revenue Code. [1] Respondent determined a deficiency in petitioners' joint Federal income tax in the amount of $ 6,758 for 1984 and additions to tax under section 6653(a)(1) and (a)(2) in the amounts of $ 338 and 50 percent of the interest due on $ 6,758, respectively. *15 The issues for decision are (1) whether petitioners own either of two properties so as to be entitled to the allowance for depreciation thereon; and if so, (2) whether petitioners properly substantiated claimed rental and depreciation expense deductions on the two properties; and (3) whether petitioners are liable for additions to tax under section 6653(a)(1) and (a)(2). Some of the facts are stipulated and are so found. The stipulation of facts and attached exhibits are incorporated herein by reference. When petitioners filed their petition, they resided at St. Louis, Missouri. This matter concerns ownership of two properties. We consider the details regarding acquisition separately for clarity. The Poinsettia Property. In late 1978 or early 1979, while petitioner Alexander Hartley and his former wife, Brenda Hartley, were married, they purchased property at 409 South Poinsettia Avenue, Compton, California 90221 (hereafter the Poinsettia property) for $ 49,000. The house was a single-family dwelling with two bedrooms, a family room, dining room, 1 and 3/4 baths, utility room, and detached one-car garage. During their marriage, they did not make any major improvements *16 to the Poinsettia property. In February of 1984, during the pendency of the divorce of Alexander and Brenda Hartley, the Poinsettia property was appraised at approximately $ 82,000. Petitioner, Alexander Hartley was divorced from Brenda Hartley in October of 1984. Pursuant to the divorce, Brenda Hartley conveyed her interest in the Poinsettia property to "Alexander Hartley, a single person" by quitclaim deed. She executed the quitclaim deed on November 29, 1984, and it was filed in the Recorder's Office of Los Angeles County on January 2, 1985. In exchange for the quitclaim deed, Brenda Hartley acquired a third deed of trust against the Poinsettia property. Downey Savings and Loan holds a first mortgage on the Poinsettia property; John and Rebecca Hartley, petitioner's parents, hold the second mortgage. Petitioner rented this property in December of 1983 at $ 600 per month, for a one-year term. The Stoneacre Property. Petitioner Josie R. Burrell Hartley is a registered nurse. Sometime during 1982, her brother and his wife, Frank and Rita Brown, conveyed to her a one-half interest in the Stoneacre property by joint tenancy grant deed. In exchange, Josie Hartley assumed *17 the monthly mortgage payments. Prior to the conveyance, she had paid rent equal to one-half of the monthly mortgage payment. Josie Hartley did not retain a lawyer or review any papers concerning the conveyance. Her brother holds the original joint tenancy grant deed, and she has only an unsigned copy. Josie Hartley did not know the original cost basis of the Stoneacre property. However, she estimated that at the time of the conveyance, the mortgage equaled $ 52,000, approximately. As evidence of her joint tenancy interest, Josie Hartley presented her unsigned copy of the joint tenancy deed, and papers from a quiet title action brought against her by her brother and his wife. On September 3, 1985, petitioners filed a joint petition under Chapter 7 of the Bankruptcy Code, and on January 2, 1986, they were discharged. The bankruptcy action caused petitioner Josie Hartley's brother and sister-in-law to file the quiet title action against her. The quiet title complaint alleged that Josie Hartley did not hold an irrevocable joint interest in the Stoneacre property because no intent to transfer an irrevocable interest existed and the transfer was without consideration. The quiet *18 title action was not resolved as of the time of trial. At some point during 1983, petitioner Alexander Hartley, a schoolteacher, moved in with his girlfriend, Josie R. Burrell Hartley (hereafter Josie Hartley), now his wife. They lived at 12414 Stoneacre, Lynwood, California (hereafter the Stoneacre property). During August of 1984 petitioners moved to St. Louis, Missouri, where Mr. Hartley began work at the Coro Foundation, and Mrs. Hartley began work as a nurse at Barnes Hospital. Even though petitioners moved, they did not sell their properties. Instead, they advertised Stoneacre for rent and after reviewing applications, rented the property to tenants. The Stoneacre tenant paid rent in an amount which almost covered the monthly mortgage payment to Josie Hartley's brother. Petitioners made up the balance of the monthly mortgage payments. As a part of their 1984 return petitioners filed a supplemental income schedule for the Stoneacre and Poinsettia properties. This schedule showed rental income received in the amounts of $ 2,600 and $ 7,200 from Stoneacre and Poinsettia, respectively. In connection with the rental of these properties, petitioners claimed expenses for *19 advertising, cleaning and maintenance, interest, repairs, taxes, and depreciation. In addition, they claimed insurance and supplies on the Poinsettia property. Respondent contends that petitioners do not own the Stoneacre and Poinsettia properties, and consequently disallowed the claimed rental expenses and depreciation. Respondent was agreeable, however, to their reporting as income the rentals received. Respondent contends that petitioners do not own these properties for several reasons. First, respondent argues that Brenda Hartley's third deed of trust on the Poinsettia property negates petitioners' ownership of the property, at least in part. Second, respondent argues that Josie Hartley did not prove ownership of the Stoneacre property because she does not have the original joint tenancy grant deed. If we find that petitioners own these properties, respondent contends that petitioners did not substantiate their claimed rental expenses or prove their cost basis in the properties for purposes of calculating depreciation. Petitioners, on the other hand, claim that they own the properties. As to the Poinsettia property, they contend that Brenda Hartley's third deed of trust *20 is akin to a third mortgage or security interest which does not affect Alexander Hartley's ownership of the Poinsettia property. They contend that the third deed of trust is a financing device only. As to the Stoneacre property, petitioners contend that the bankruptcy and quiet title papers prove that Josie Hartley owns the Stoneacre property. Further, petitioners contend that they properly substantiated their claimed expenses. They were unable to offer this substantiation at trial, however, because their return preparer had all of the substantiation. Petitioners did not call their return preparer as a witness to testify. We note that the failure of petitioners to introduce favorable evidence allegedly within their possession gives rise to the presumption that if produced, it would be unfavorable. Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Before we turn to an analysis of the law, we note that at trial on two occasions petitioners moved to continue this trial to a later date. Petitioners' *21 main argument was that since counsel was retained at the last minute, counsel was not prepared for trial. Twice we denied petitioners' motion for continuance under Rule 134, stating that continuances are only granted in exceptional circumstances, and that the rule provides that conflicting engagements of counsel or employment of new counsel ordinarily will not be regarded as grounds for continuance. We point out that counsel had the opportunity to request that the record remain open so that further evidence unavailable at trial could be submitted. We find that Josie Hartley is the owner of a one-half interest in Stoneacre. We begin our analysis with an examination of California state statutory and judicial law because State law defines property rights. The pertinent California statutory provision defining a joint tenancy and describing the method of its creation (Cal. Civ. Code sec. 683 (West 1989)) provides: § 683. Joint tenancy; definition; method of creation (a) A joint interest is one owned by two or more persons in equal shares, by a title created by a single will or transfer, *22 when expressly declared in the will or transfer to be a joint tenancy, or by transfer from a sole owner to himself or herself and others, or from tenants in common or joint tenants to themselves or some of them, or to themselves or any of them and others, or from a husband and wife, when holding title as community property or otherwise to themselves or to themselves and others or to one of them and to another or others, when expressly declared in the transfer to be a joint tenancy, or when granted or devised to executors or trustees as joint tenants. A joint tenancy in personal property may be created by a written transfer, instrument or agreement. Thus, in order to create a joint tenancy interest in property by will or transfer, the instrument must expressly declare the interest to be a joint tenancy. In re Christen's Estate, 238 Cal. App. 2d 521, 48 Cal. Rptr. 26 (1965). A deed taken in joint tenancy establishes prima facie that the property is in fact held in joint tenancy. Schindler v. Schindler, 126 Cal. App. 2d 597, 272 P. 2d 566 (1954); King v. King, 107 Cal. App. 2d 257, 236 P. 2d 912 (1951). *23 Testimony as to the hidden intentions of one party to a joint tenancy will not rebut the presumption that a joint tenancy deed establishes. Machado v. Machado, 58 Cal. 2d 501, 25 Cal. Rptr. 87, 375 P. 2d 55 (1962). In order to rebut the presumption, the evidence must show common agreement or understanding that the interest was other than joint tenancy. Machado v. Machado, supra.
Formal acceptance is not necessary since acceptance is presumed in the absence of evidence to the contrary. Hill v. Donnelly, 56 Cal. App. 2d 387, 132 P. 2d 867 (1942). Petitioners have not presented the original, signed copy of the joint tenancy deed which would constitute prima facie evidence of a joint tenancy. They were unable to obtain this deed because it is currently in the hands of the Browns with whom their relations are strained. As evidence of Josie Hartley's joint tenancy interest in Stoneacre, however, petitioners presented Josie Hartley's unsigned copy of the joint tenancy deed, their bankruptcy papers, the Browns' complaint to quiet title, and her answer. In connection with their bankruptcy proceedings, petitioners listed Josie *24 Hartley's interest in the Stoneacre property as an exempt asset. The Browns' quiet title complaint alleges that they granted a joint tenancy interest by joint tenancy deed to Josie Hartley, although without consideration. The quiet title complaint further alleges that a joint tenancy interest does not exist because the Browns did not intend to create an irrevocable interest in Josie Hartley. It goes on to allege that as relatives of Josie Hartley, the Browns only wanted Josie Hartley to receive the tax benefit of mortgage interest deductions. We find that when the Browns filed this quiet title complaint, they conceded the existence of a joint tenancy grant deed. The existence of a joint tenancy deed is prima facie evidence of a joint tenancy. Neither the allegations of the quiet title complaint nor respondent have rebutted the presumption that a joint tenancy exists. Several reasons buttress our finding that a joint tenancy interest exists. First, consideration is not necessary to form a joint tenancy, only intent as expressed in written form. The Browns transferred a joint tenancy interest to Josie Hartley by joint tenancy grant deed. The testimony and evidence, however, *25 make it clear that consideration was paid by petitioner in the form of the monthly mortgage payments. Further, petitioner continued her obligation as to the mortgage by having the rental payments made directly to the Browns and then paying the differential between the rental receipts and the mortgage payments to the Browns. Third, Josie Hartley paid the real estate tax on the property. Thus, we find that Josie Hartley holds a one-half joint tenancy ownership interest in Stoneacre. We must now decide whether petitioners are entitled to deduct rental expenses and depreciation on Stoneacre. Petitioners declared rental income on Stoneacre in the amount of $ 2,600. Petitioners claimed rental expenses totaling $ 8,941 for advertising, cleaning and maintenance, interest, repairs, and taxes which respondent disallowed in full. As a preliminary observation, we note that deductions are a matter of legislative grace and that petitioners must prove entitlement to their claimed deductions. Welch v. Helvering, 290 U.S. 111, 115 (1933); Rule 142(a). When petitioners moved, they *26 decided to rent Stoneacre. In order to prepare Stoneacre for the tenant, petitioners purchased some materials and occasionally paid someone else to do some work. Otherwise, petitioner Alexander Hartley prepared the property for renting. He did not give specifics as to the cleaning and maintenance performed and he did not offer any substantiation at trial. His testimony was so vague and nonspecific as to any of these items that we have no basis upon which we can estimate the amounts involved. He testified that the return preparer had and still has the receipts for cleaning and maintenance totaling $ 250, the amount claimed on the return. Petitioners did not substantiate cleaning and maintenance expenses and they have not met their burden of proof. Rule 142(a). We uphold respondent's disallowance of cleaning and maintenance expenses. For several weeks, petitioners advertised in the paper for tenants. On their 1984 return, they claimed $ 73 for advertising but did not have any substantiation for trial. We believe petitioners made this expenditure and we allow it as a deduction. Petitioners claimed repair expenses for plumbing and window screens in the amount of $ 162. Petitioner *27 did not have any substantiation at trial for the claimed repair expenses and here, too, their testimony was completely vague. Petitioners did not meet their burden of proof, Rule 142(a), therefore we uphold respondent's disallowance in this respect. Petitioners claimed $ 8,000 in interest on the mortgage payments. Petitioner Alexander Hartley estimated the $ 8,000 as interest paid. He estimated the interest because Hammond and Company, the holder of the mortgage on Stoneacre, sent the statements showing the amount of interest paid to the Browns. Petitioners are entitled to interest expense deductions in connection with the mortgage of approximately $ 52,000. Petitioners' inability to prove the amount of interest paid is a result of intra-family litigation surrounding the property. However, in view of the complete lack of information regarding the mortgage, with no information as to interest rate and so forth, we are unable to exercise our prerogative to estimate such interest expenses under Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930). See, e.g., Vanicek v. Commissioner, 85 T.C. 731, 742-743 (1985). Accordingly, respondent's disallowance *28 is sustained. Petitioners claimed a real property tax deduction in the amount of $ 456. As substantiation, petitioners offered a check in the amount of $ 386.43 which was made out to L.A. County Tax Collectors. Petitioners explained that a difference in amounts existed because they paid the tax bill in two installments. Petitioners are entitled to deduct taxes in the amount substantiated, $ 386.43. In addition, petitioners claimed depreciation expense under ACRS of $ 1,140, which respondent disallowed in full. Petitioners' 1984 return reflected a cost basis of $ 57,000 in Stoneacre and that it was 18-year real property placed in service during 1984. Petitioner Josie Hartley did not know the original purchase price of the Stoneacre property when the Browns purchased it. However, she estimated that $ 52,000 was the mortgage amount when she undertook the payments. Petitioner placed this property into service in August of 1984 when she first rented it. She is entitled to a deduction for depreciation on it. Unfortunately, we have no basis whatsoever, given the paucity of this record, upon which we can estimate a depreciation allowance. We have no information about the age *29 or condition of the structure. We have no information about the value of the underlying land. In such a posture, we have no basis upon which we can make an estimation of depreciation, and we refuse to guess. Respondent contends that petitioner Alexander Hartley is, at the most, a one-half community property owner of the Poinsettia property. Respondent argues that Brenda Hartley's third deed of trust is a security interest which limits petitioner Alexander Hartley's interest to his pre-dissolution community property interest. On the other hand, petitioner Alexander Hartley contends that Brenda Hartley holds a deed of trust which is a security interest in the property and that he is the full owner of the Poinsettia property. Alexander Hartley, in support of this contention, points to the quitclaim deed in which Brenda Hartley, pursuant to dissolution in marriage, conveyed her one-half interest to Alexander Hartley. The pertinent California statutory provision in effect (Cal. Civ. Code sec. 2924 (West 1989)) provides as follows: § 2924. Transfer as security deemed mortgage or pledge; *30 power of sale; restrictions on exercise; notice of default and election to sell; recordation; waiting period; notice of sale; evidence of compliance Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge. Generally, deeds of trust are financing arrangements similar to mortgages and the same rules apply to both. Domarad v. Fisher & Burke, Inc., 270 Cal. App. 2d 543, 76 Cal. Rptr. 529 (1969). Compare Doane v. California Land Co., 243 F. 67 (9th Cir. 1917), cert. denied 245 U.S. 660 (1917); Durkin v. Burr, 60 Ca. 360 (1882). When determining whether a deed of trust is like a mortgage, all the facts and circumstances surrounding the transaction are examined in their totality. Workmon Construction Co. v. Weirick, 223 Cal. App. 2d 487, 36 Cal. Rptr. 17 (1963). Viewing all the facts and circumstances *31 surrounding the case at bar, we find that petitioner Alexander Hartley is the owner of the Poinsettia property subject to a first mortgage by Downey Savings and Loan, a second mortgage by John and Rebecca Hartley, and a third mortgage by Brenda Hartley. Pursuant to their dissolution of marriage and as a part of the property settlement, Brenda Hartley transferred her one-half community property interest to Alexander Hartley by quitclaim deed. Brenda Hartley's deed of trust, otherwise characterized a security interest or mortgage, is a financing arrangement only, not a retention of ownership on her part. Thus, petitioner Alexander Hartley is the sole owner of Poinsettia as of the November date of the quitclaim deed. We must now decide whether petitioners are entitled to deduct claimed rental and depreciation expenses regarding Poinsettia. Petitioners reported rental income received in the amount of $ 7,200 ($ 600 per month). Petitioners claimed rental expenses for advertising, cleaning and maintenance, insurance, interest, repairs, supplies, and taxes totaling $ 7,228 which respondent disallowed in full. Petitioners claimed advertising expenses in the amount of $ 100 for soliciting *32 new tenants through the newspaper. Petitioners did not have any substantiation for the claimed advertising expenses. However, we believe these costs, if incurred at all, would have been incurred at the end of 1983 when the tenant's rental application was received. Petitioners have failed to meet their burden of proof, Rule 142(a), and we uphold respondent's disallowance in this respect. In order to prepare the property for renting, petitioners expended amounts for repairing broken windows, a broken door and other various maintenance items, and claimed cleaning and maintenance expenses in the amount of $ 375. Petitioners did not offer any substantiation but mentioned that Mr. Torres, the supervisor of the Poinsettia property, would have specifics. Mr. Torres did not testify at trial and no receipts were offered. Petitioners also claimed repair expenses for repairs to the kitchen and plumbing in the amount of $ 574. Petitioners stated that Mr. Torres sent substantiation for these claimed repairs and that petitioners had possession of these receipts for repairs. However, petitioners have not made these receipts a part of the record. Petitioners have failed completely to meet *33 their burden of proof concerning these expenses. Rule 142(a). Thus, we refuse to estimate under Cohan v. Commissioner, supra, as petitioners have not provided us with any reasonable basis to make such an estimation. Vanicek v. Commissioner, supra.
Petitioners claimed insurance expense in the amount of $ 602. Petitioners did not have a cancelled check or receipt of payment. Petitioner Alexander Hartley stated that this claimed insurance expense figure was accurate. He explained that the insurance is paid from an impound account which documents the payment. Petitioners stated that Downey Savings and Loan sent a statement showing the amount that had been paid for insurance in 1984. However, petitioners did not make this statement a part of the record. Petitioners' testimony concerning the insurance expense was specific, we believe it is credible, and we allow it as a deduction. Petitioners claimed interest in the amount of $ 4,709. Petitioners did not offer any evidence for this claimed amount at trial, other than testimony. In support of the interest expense, petitioners stated that Downey Savings and Loan had sent them a statement *34 indicating interest paid in the claimed amount. We believe petitioners' testimony and they are entitled to deduct this amount. Petitioners claimed supply expenses in the amount of $ 10. However, petitioners were unable to identify the type of supplies purchased or to offer receipts substantiating these purchases. Their testimony here, too, was nonspecific and vague. Petitioners failed to meet their burden of proof, Rule 142(a), and we uphold respondent's disallowance in this respect. Petitioners claimed taxes in the amount of $ 858. Once again, petitioners did not offer any substantiation at trial. However, petitioners stated that the claimed amount of $ 858 is an accurate figure based on the amount of taxes paid on the property from the impound account. Again, petitioner Alexander Hartley's testimony was specific, it is credible, and we allow this deduction. In addition, petitioners claimed depreciation expense in the amount of $ 4,700, which respondent disallowed in full. Respondent argues that a depreciation expense of $ 4,700 per year would translate into a 10-year useful life which is not the normal useful life for residential real property. Respondent also points *35 out that during 11 months of 1984, both Brenda Hartley and Alexander Hartley still owned the Poinsettia property as community property. Thus respondent argues that petitioners are not entitled to depreciation expense because the tax basis allocable to Alexander Hartley is unclear, at least for the 1984 taxable year in issue. Brenda and Alexander Hartley purchased the Poinsettia property in 1978 for $ 49,000. Petitioner did not know how the amount of the depreciation expense was calculated. Petitioner has provided us with no information in regard to age or condition of this property. He also has failed to provide any information as to the value of the underlying land. In this posture, we are unable to make an estimation of the amount of depreciation allowable and accordingly uphold respondent in this regard. Respondent determined additions to tax under section 6653(a)(1) and (2). Section 6653(a)(1) imposes a 5 percent addition to tax on any underpayment of tax due to negligence or intentional disregard of rules and regulations. Additionally, section 6653(a)(2) provides for an addition *36 to tax in an amount equal to 50 percent of the interest due on that portion of the underpayment attributable to negligence or intentional disregard of rules and regulations. Negligence is defined as the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. Neely v. Commissioner, 85 T.C. 934, 947 (1985). We believe that petitioners did incur many of the claimed expenses associated with their rental properties. However, due to their move to St. Louis, their complete change of lifestyle, and their bankruptcy suit, we believe that petitioners' lives have been in complete disarray. Petitioners are, however, both educated and intelligent people. They made little, if any, effort to substantiate the various amounts claimed and disallowed, even though they have known since the commencement of the audit herein that they needed such information. We note that they were residing in St. Louis when they filed their 1984 Federal income tax return and they are thus not able to contend that an interstate move resulted in the loss of these documents and records. Petitioners are negligent within the meaning of section *37 6653(a)(1) and (2) in regard to the full amount of the deficiency. Due to disposition of this case, Decision will be entered under Rule 155. Footnotes
1. All section references are to the Internal Revenue Code of 1954 as amended and in effect for the taxable year in question unless otherwise indicated. All Rule references are to the Tax Court Rules of Practice and Procedure.↩